JUDITH E. FILLPOT, Plaintiff-Appellant, v. MIDWAY AIRLINES, INC., Defendant-Appellee.

Fourth District    No. 4—93—0925

Argued March 23, 1994.—Opinion filed May 5, 1994.

238

Paul E. Selin (argued), of Zimmerly, Gadau, Selin & Otto, of Champaign, for appellant.

Karen L. Kendall (argued), of Heyl, Royster, Voelker & Allen, of Peoria, and James C. Kearns and John D. Flodstrom, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In February 1991, as plaintiff, Judith E. Fillpot, exited from one of defendant Midway Airlines' airplanes onto the tarmac of Willard Airport in Champaign, Illinois, she slipped and fell on a natural accumulation of ice. Plaintiff sued for personal injuries, alleging that defendant, as a common carrier, owed her the highest degree of care and breached that duty by failing to protect her from or warn her of the danger presented by the ice. The trial court agreed that defendant owed plaintiff the highest degree of care while she was deplaning but ruled that defendant did not breach this duty because plaintiff fell on a natural accumulation of ice. The court granted defendant's motion for summary judgment. Plaintiff appeals, arguing that common carriers owe passengers a duty to protect them from the dangers presented by natural accumulations of ice.

We disagree and affirm.

# I. BACKGROUND

In February 1991, plaintiff took a Midway Airlines flight from Chicago to Willard Airport in Champaign. When the plane arrived, plaintiff saw snow blowing past the windows of the plane. After the plane came to a stop on the tarmac, plaintiff went to the door of the plane and noticed that the weather conditions were extremely hazardous, including very high winds and ice particles blowing in the wind. From the top of the stairs, plaintiff could see snow and ice on the tarmac. Other passengers noticed that—without exception—the tarmac was uniformly and evenly covered with ice.

When plaintiff exited the plane, she was initially disorientated; however, she eventually determined what direction led to the terminal. No agent of defendant guided plaintiff or the other passengers toward the terminal after they deplaned. Plaintiff feared she was going to fall as she proceeded to the terminal and accordingly carefully watched where she walked. Nonetheless, she slipped on the ice and fell before reaching the terminal. Plaintiff did not know if the ice extended all the way to the terminal; however, she testified that the ice did extend from the plane to the point where she fell.

In September 1991, plaintiff filed a one-count complaint, alleging that defendant (1) failed to provide guidance or direction upon deplaning; (2) failed to offer ground transportation from the plane to the terminal; (3) parked and deplaned passengers in an area that was hazardous due to weather conditions; (4) failed to spread sand or other chemicals or abrasives; (5) failed to warn or caution passengers of the poor surface conditions; and (6) positioned the plane poorly. In her complaint, plaintiff also alleged that defendant published a policy manual which stated that accidents should be prevented, areas should be kept clear of snow and ice, and sand or cinders should be available at the gates for use on passenger walkways. However, she was never told of these policies, nor was she aware of who was responsible for removing any snow or ice.

In January 1992, defendant filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1992)). The trial court denied this motion, holding that "defendant owed plaintiff a duty in the premises[,] i.e.[,] the exercise of the highest duty of care while plaintiff as alleged was deplaning."

In August 1993, defendant filed a motion for summary judgment, arguing that no breach of duty occurred because plaintiff slipped on a natural accumulation of ice. The trial court deemed the facts undisputed, ruled that defendant did not breach a duty to defendant,

and accordingly, granted defendant summary judgment. This appeal followed.

## II. ANALYSIS

### A. *Defendant's Failure To Cross-Appeal*

On appeal, defendant raised the issue of whether the trial court correctly determined that plaintiff and defendant were engaged in a passenger-carrier relationship at the time plaintiff slipped and fell. In response, plaintiff filed a motion to strike the portions of defendant's brief addressing this issue because defendant did not file a notice of cross-appeal raising this issue pursuant to Supreme Court Rule 303(a)(3) (134 Ill. 2d R. 303(a)(3)). In support of her motion, plaintiff cites *National Bank v. City of Lexington* (1985), 138 Ill. App. 3d 805, 486 N.E.2d 967, for the proposition that when an appellee fails to cross-appeal a portion of an order, the reviewing court lacks authority to examine or modify that portion of the order. Although we agree with plaintiff that *National Bank* does stand for this proposition, for the reasons that follow, we decline to follow it.

In *National Bank*, plaintiff's decedent was injured by a falling tree. Although the trial court concluded that cutting down a tree was an ultrahazardous activity, it nonetheless granted summary judgment in favor of defendant. When plaintiff appealed, defendant attempted to argue that this activity did not constitute an ultrahazardous activity. This court ruled that it would not consider this argument because defendant failed to file a notice of appeal of the trial court's conclusion that the activity was ultrahazardous. *National Bank*, 138 Ill. App. 3d at 809, 486 N.E.2d at 970.

Plaintiff here argues that under the reasoning in *National Bank*, defendant waived the arguments concerning the standard of care by failing to cross-appeal. Therefore, plaintiff contends that this court should strike the portions of defendant's brief addressing the standard of care. However, *Landmarks Preservation Council v. City of Chicago* (1988), 125 Ill. 2d 164, 531 N.E.2d 9, requires a different result. In *Landmarks*, the supreme court ruled that trial court findings adverse to the appellee do not require the appellee to cross-appeal if the judgment of the trial court was not, at least in part, against it. *Landmarks*, 125 Ill. 2d at 174, 531 N.E.2d at 13.

■ In this case, while the trial court made a *finding* adverse to defendant (namely, that it owed plaintiff a duty to exercise the highest level of care), the *judgment* of the trial court was in no way against defendant. We note that the trial court granted defendant summary judgment. The court's reasoning for doing so does not alter the fact

that the judgment was against plaintiff and in no part was it against defendant. This conclusion is consistent with the role of the appellate court: we review *judgments*, not the *findings* underlying those judgments. Thus, if the judgment is correct for a reason other than the one cited by the trial court, this court will affirm even if the trial court's stated reason is erroneous. See *Larson v. Decatur Memorial Hospital* (1992), 236 Ill. App. 3d 796, 801, 602 N.E.2d 864, 868 (reviewing court may sustain decision of the trial court with regard to a summary judgment on any grounds supported by the record, regardless of whether the trial court made its decision on a proper ground); see also *National Bank v. Westinghouse Electric Corp.* (1992), 235 Ill. App. 3d 697, 703-04, 600 N.E.2d 1275, 1280.

Under the reasoning in *Landmarks,* we hold that defendant was not required to cross-appeal to preserve its arguments concerning the standard of care. To the extent *National Bank* requires a different result, we overrule it. Accordingly, we deny plaintiff's motion to strike the portion of defendant's brief addressing the appropriate standard of care.

## B. *Summary Judgment*

The purpose of summary judgment is to determine whether a genuine issue of material fact exists. A motion for summary judgment should only be granted when:

"[T]he pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992).)

In deciding whether to grant summary judgment, a court shall construe the pleadings, affidavits, depositions, admissions, and exhibits strictly against the movant and liberally in favor of the opponent. *Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 795, 601 N.E.2d 286, 289.

■ In order to recover in tort for negligence, plaintiff must show that (1) defendant owed plaintiff a duty, (2) this duty was breached, and (3) this breach was the proximate cause of plaintiff's injuries. (*Dinkins v. Ebbersten* (1992), 234 Ill. App. 3d 978, 983, 600 N.E.2d 873, 876.) Here, the trial court determined that defendant owed plaintiff the highest degree of care, namely, the duty a common carrier owes its passengers. The court further found as a matter of law that this duty was not breached. The question of whether a duty existed—and, if so, the nature of that duty—must be determined by the courts as a matter of law; the question of whether a duty has been breached is a factual one, left to the trier of fact to resolve. *Dinkins,* 234 Ill. App. 3d at 983-84, 600 N.E.2d at 876.

## C. *Duty*

Common carriers have a duty to exercise the highest standard of care in protecting their passengers. The rationale for the imposition of the highest degree of care on common carriers "is that the degree of care should be commensurate with the danger to which the passenger is subjected, and the degree of care required to be exercised increases as the danger increases." (*Katamay v. Chicago Transit Authority* (1972), 53 Ill. 2d 27, 30, 289 N.E.2d 623, 625.) In *Davis v. South Side Elevated R.R. Co.* (1920), 292 Ill. 378, 127 N.E. 66, a case involving a railroad, the supreme court explained why this duty of care applies to common carriers, as follows:

> " 'A railroad company is held to the highest degree of care in respect to the condition and management of its engines and cars[ ] because negligence in that respect involves extreme peril to passengers, against which they cannot protect themselves. [The railroad company] would not act reasonably if it did not exercise greater care in equipping and running its trains than in regard to the condition of its station grounds.' " *Davis*, 292 Ill. at 381-82, 127 N.E. at 68, quoting *Moreland v. Boston & Providence R.R. Corp.* (1886), 141 Mass. 31, 33, 6 N.E. 225, 227.

Here, the trial court held that defendant owed plaintiff "the exercise of the highest duty of care while plaintiff as alleged was deplaning." Defendant argues that the court erred in so holding. According to defendant, it should only be held to the standard of ordinary care because plaintiff had already deplaned and thus had reverted to the status of a pedestrian. We disagree.

Common carriers are held to the highest duty of care because passengers must rely wholly on the carrier for their safety *while they are passengers*. This case presents the question of whether plaintiff's status as a "passenger" had ended when she slipped and fell on the ice. We hold (as did the trial court) that it had not.

In *Katamay*, the supreme court found that the evidence established the passenger-carrier relationship where a passenger caught her heel in the planks of a train platform as she moved to board a train. The court explained its holding as follows:

> " 'The relation of carrier and passenger does not terminate, until the passenger has alighted from the train and left the place where passengers are discharged, and the duty of the carrier to its passenger continues, until the passenger has had a reasonable time in which to leave the *** alighting place.' " *Katamay*, 53 Ill. 2d at 30, 289 N.E.2d at 625, quoting *Chicago Terminal Transfer R.R. Co v. Schmelling* (1902), 197 Ill. 619, 629, 64 N.E. 714, 717.

Defendant here argues that once plaintiff safely exited the plane, the only hazards she faced were snow and ice, hazards normally

faced by pedestrians during winter weather. Citing *Jones v. Chicago & Northwestern Transportation Co.* (1990), 206 Ill. App. 3d 136, 563 N.E.2d 1120, defendant contends that once a passenger has safely exited the conveyance, a common carrier owes only ordinary care to that *former* passenger. Plaintiff responds that she was never given an opportunity to reach a place of safety; therefore, defendant's duty of highest care never ceased. She contends that defendant had a duty to provide her safe passage to the terminal, not just until she reached the ground.

■ We hold that the defendant's duty of highest care applies when passengers entrust the common carrier to protect them from dangers to which they may not otherwise have been exposed and from which they cannot otherwise protect themselves. In this case, plaintiff had disembarked from the plane and was walking on the tarmac toward the terminal. Plaintiff had no control over where defendant placed her on the tarmac as she deplaned; she had no choice but to exit the plane where it stopped and proceed, on foot, to the terminal. As she did so, she slipped, fell, and injured herself. Under these circumstances, the passenger-carrier relationship had not ended, nor had defendant's duty to exercise the highest degree of care in protecting plaintiff. See *Katamay*, 53 Ill. 2d at 30, 289 N.E.2d at 625.

### D. *The Natural Accumulation of Snow and Ice*

The law is clear in Illinois that absent a contractual duty, a landowner does not have a duty to remove or take other precautions against the dangers inherent in natural accumulations of snow or ice. (*American States Insurance Co. v. A.J. Maggio Co.* (1992), 229 Ill. App. 3d 422, 425, 593 N.E.2d 1083, 1085.) To recover for a slip and fall on ice, a plaintiff must show that the ice upon which she fell was an unnatural accumulation caused or aggravated by defendant. (*Crane v. Triangle Plaza, Inc.* (1992), 228 Ill. App. 3d 325, 330, 591 N.E.2d 936, 940.) In the present case, plaintiff did not even allege that the ice on the tarmac was due to anything other than natural accumulation.

Plaintiff, nonetheless, argues that the rule regarding the "natural accumulation" of ice and snow should not apply here because defendant owed her a duty to exercise the highest standard of care to protect her. Because of this higher duty, plaintiff urges us to reverse the trial court's holding that no breach of duty occurred because of the natural accumulations rule and instead to impose a duty on defendant to protect plaintiff even from a natural accumulation of ice. We decline to do so.

The trial court relied upon *Serritos v. Chicago Transit Authority* (1987), 153 Ill. App. 3d 265, 505 N.E.2d 1034, to support its conclusion that the natural accumulation rule applies, notwithstanding the highest standard of care required of common carriers. In *Serritos*, the plaintiff slipped and fell on the snow-covered steps of a Chicago bus. The court found that it would be impractical to require bus drivers to clean the steps of their buses each time snow is tracked onto them. Accordingly, the *Serritas* court refused to impose a duty on the common carrier to remove the snow from the steps of the bus. *Serritos*, 153 Ill. App. 3d at 271-72, 505 N.E.2d at 1039.

Although *Serritos* did not explicitly apply the natural accumulations rule generally to common carriers, the court did so in *Shoemaker v. Rush-Presbyterian-St. Luke's Medical Center* (1989), 187 Ill. App. 3d 1040, 543 N.E.2d 1014. In *Shoemaker*, the plaintiff slipped and fell on a natural accumulation of water when exiting an elevator, a common carrier. In finding no duty existed to protect the plaintiff from this danger, the court held that even under the highest degree of care applied to common carriers, a carrier did not have a duty to protect its passengers from natural accumulations of water. *Shoemaker*, 187 Ill. App. 3d at 1045, 543 N.E.2d at 1017.

In the present case, plaintiff slipped on a natural accumulation of ice. Plaintiff did not allege that this accumulation was created or aggravated by defendant. In *Sheffer v. Springfield Airport Authority* (1994), 261 Ill. App. 3d 151, 154, this court held that "despite [the] heightened duty of care, a common carrier has no duty to clean up natural accumulations of snow, ice and water." We adhere to our holding in *Sheffer* and reject plaintiff's argument that defendant had a duty to protect her from the natural accumulation of snow and ice upon which she slipped and fell.

Last, plaintiff also argues that a duty was created because defendant's policy manual indicated salt or other abrasives should be kept near the gate to keep the walkways clear. However, plaintiff fails to cite any authority for the proposition that a policy manual (of which she had no knowledge) creates such a duty, and we decline to impose such a duty in this case.

## III. CONCLUSION

For the reasons stated, we deny plaintiff's motion to strike the portions of defendant's brief concerning the appropriate standard of care; further, we affirm the trial court's summary judgment in favor of defendant.

Affirmed.

COOK and GREEN, JJ., concur.