PAMELA ROGERS, Indiv. and as Special Adm'r of the Estate of Steven E. Rogers, Deceased, Plaintiff-Appellant, v. CLARK EQUIPMENT COMPANY, Defendant (Geraghty Industrial Equipment, Inc., n/k/a Material Handling Services, Inc., Defendant-Appellee).

Second District   No. 2—99—1462

Opinion filed February 9, 2001.

Robert B. Patterson, of Law Offices of Robert B. Patterson, Ltd., of Chicago, and Val C. Simhauser, Assistant Attorney General, of Springfield, for appellant.

David E. Kawala, of Swanson, Martin & Bell, of Chicago, for Clark Equipment Company.

Barry L. Kroll, Alyssa M. Campbell, and Lloyd E. Williams, Jr., all of Williams, Montgomery & John, Ltd., of Chicago, for appellee Geraghty Industrial Equipment, Inc.

JUSTICE BOWMAN delivered the opinion of the court:

On April 6, 1993, Steven Rogers was killed when the Clark forklift he was operating overturned and landed on top of him. Pamela Rogers, individually and as administrator of the estate of Steven Rogers, sued Geraghty Industrial Equipment, Inc. (Geraghty), and Clark Equipment Company (Clark). Geraghty was a distributor of Clark equipment and was the predecessor company of Material Handling Services, Inc. (MHS). The parties refer to defendant distributor as MHS, so we will do the same.

Plaintiff's complaint contained claims of strict liability and negligence. The strict liability claim was dismissed pursuant to the statute of repose (735 ILCS 5/13—213 (West 1998)). Both defendants

filed motions for summary judgment on the remaining negligence count. The trial court denied Clark's motion for summary judgment but granted summary judgment in favor of MHS. The court made a determination pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement of or appeal from the summary judgment order. Plaintiff appeals the summary judgment order in favor of MHS, arguing that (1) a genuine issue of material fact existed as to whether MHS voluntarily undertook to notify the forklift owner of the availability of a safety seat for the forklift; and (2) this court should recognize a common-law duty to notify of postsale safety improvements.

In 1971, Clark manufactured the forklift involved in the decedent's accident and sold it to the Illinois Department of Transportation (IDOT). The accident happened during the course of the decedent's employment with the Illinois Department of Central Management Services.

When the forklift was manufactured, it was not equipped with a seat belt or any type of restraining device. In the early 1980s, Clark developed an operator restraint system (ORS) consisting of a winged back seat and a seat belt that could be retrofitted onto older forklifts to help prevent injury in the event of a lateral overturn. The ORS only fit on forklift models C300 and C500. The forklift at issue in this case was a model CFY20.

In 1983 and 1984, Clark undertook a retrofit campaign, called the Phase I campaign, to provide customers who owned C300 and C500 model forklifts with the ORS. To that end, Clark sent letters to customers believed to own the C300 and C500 forklifts. The letters informed the forklift owners that Clark would provide the ORS for free and bear the cost of installing the ORS on qualifying forklift models. Clark's dealers, such as MHS, performed the ORS installation and Clark reimbursed the dealers. The dealers were required to participate in the Phase I campaign.

IDOT received a letter from Clark informing it of the retrofit program. IDOT sent a reply card to Clark identifying two forklifts, one of which was the one involved in the decedent's accident. Clark informed IDOT by letter that it had received IDOT's reply card. The letter stated in relevant part:

"You submitted a reply to Clark, listing your equipment. A printout of your equipment that is *not* included in this offer is attached. Older model internal combustion and electric powered lift trucks are being reviewed by engineering. No disposition has been made and your records will be kept on file for any future announcements.

\* \* \*

If you have any questions regarding the equipment you submitted or operation safety needs, contact your local Clark dealer." (Emphasis in original.)

By 1992, Clark had developed a "universal seat ORS" (universal seat) that would fit on all models of Clark forklifts. The program for informing customers of the availability of the universal seat was known as Phase II. Unlike Phase I, Clark did not contact customers directly to inform them of the universal seat's availability. Instead, Clark told its dealers, including MHS, to inform customers that the universal seat was available. Also unlike Phase I, the customer was responsible for paying for the installation of the universal seat. MHS did not notify IDOT that the universal seat was available for the forklift involved in Steven Rogers's accident.

In its motion for summary judgment, MHS argued that it owed no duty to plaintiff's decedent. Plaintiff responded that MHS voluntarily undertook a duty to notify IDOT of the availability of a safety seat for the forklift. Plaintiff also raised the argument that the trial court should recognize a common-law duty to notify of postsale improvements under the facts of this case. Both plaintiff and the trial court recognized, however, that the trial court was bound by *Modelski v. Navistar International Transportation Corp.*, 302 Ill. App. 3d 879 (1999), in which the court declined to recognize a common-law duty to retrofit a tractor with a safety device that would have eliminated the hazard that caused the decedent's accident. The trial court ruled that MHS did not voluntarily undertake a duty to notify and, consequently, granted summary judgment for MHS. Plaintiff filed a timely notice of appeal.

■ According to section 2—1005(c) of the Code of Civil Procedure (735 ILCS 5/2—1005(c) (West 1998)), a court should enter summary judgment if the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. A reviewing court should reverse an order granting summary judgment if the evidence shows that a genuine issue of material fact exists or if the judgment is incorrect as a matter of law. *American Family Mutual Insurance Co. v. Hinde*, 302 Ill. App. 3d 227, 231 (1999). We apply a *de novo* standard of review to the trial court's decision to grant summary judgment. *Hinde*, 302 Ill. App. 3d at 231. When evaluating the facts, we construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229, 234 (1990).

■ Summary judgment in favor of a defendant is proper when a

plaintiff has not established an essential element of a cause of action. *Lavazzi v. McDonald's Corp.*, 239 Ill. App. 3d 403, 408 (1992). One of the essential elements of a negligence action is the existence of a duty that the defendant owed to the plaintiff. *Lavazzi*, 239 Ill. App. 3d at 408.

■ Here, plaintiff claims that MHS voluntarily undertook the duty to notify its customer, IDOT, of the availability of the universal seat. Apparently, plaintiff contends that MHS's alleged duty extended to the decedent as a foreseeable user of the forklift. Whether a defendant has voluntarily undertaken a legal duty to a plaintiff is a question of law. *Lavazzi*, 239 Ill. App. 3d at 409. Any duty imposed on a defendant under this theory is limited to the extent of the undertaking. *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992). With these principles in mind, we consider whether MHS voluntarily undertook a duty to notify.

Plaintiff asserts that she established a voluntary undertaking based on (1) the dealer sales agreement between MHS and Clark, (2) Clark's instructions to MHS to notify customers that the universal seat was available, and (3) custom and practice between Clark and MHS. For the reasons' that follow, we reject each of plaintiff's assertions.

We begin by addressing the dealer sales agreement. Plaintiff maintains that MHS undertook a duty to notify by agreeing to the following provisions:

"CLARK expects that DEALER will use its best efforts to promote the sale of the products in its trade area and to meet or exceed established sales performance goals. Honest dealing, competent employees and prompt and efficient service at fair and reasonable prices to the customer are the basic requirements which DEALER will be expected to provide in order to create and maintain goodwill for the DEALER and CLARK.
* * *
DEALER will perform special policy adjustments and field campaign adjustments requested by CLARK for all products in DEALER's APR regardless of where or by whom sold and will co-operate fully with CLARK in identifying and notifying owners of products subject to any such adjustments.
* * *
DEALER will at all times maintain an inventory of parts in such quantity and variety as is reasonably necessary to enable DEALER to fulfill its responsibility to provide prompt service and availability of parts to all customers in the APR in accordance with policies established by CLARK from time to time."

Plaintiff also argues that MHS generally agreed to follow Clark's

instructions on a number of matters including providing warranty and installation service to customers, maintaining its service area, maintaining an inventory of parts, keeping a customer list, and training employees.

Generally speaking, the only way for one who is not a party to a contract to assert rights pursuant to the contract is to claim that she is a third-party beneficiary of the contract. Here, plaintiff concedes that she cannot sustain a claim that the decedent was a third-party beneficiary of the dealer sales agreement. Consequently, plaintiff attempts to create the new concept of voluntary undertaking based on a contract. We cannot agree with an approach that combines and obfuscates the separate concepts of voluntary undertaking in tort and third-party beneficiary to a contract.

■ In our view, plaintiff cannot escape the third-party beneficiary issue. If signing the contract created a duty, and the plaintiff who claims the benefit of the duty was not a party to the contract, then the plaintiff must demonstrate that he or she was a third-party beneficiary of the contract. Here, the terms of the dealer sales agreement did not establish that MHS intended to undertake a duty to treat plaintiff's decedent as a third-party beneficiary or that MHS intended to undertake a duty to make reasonable attempts to notify IDOT of its postsale safety improvements. Thus, the act of entering into the dealer sales agreement does not establish that MHS voluntarily undertook a duty to notify.

Plaintiff relies on *Berg v. Allied Security, Inc.*, 297 Ill. App. 3d 891 (1998), *vacated on other grounds*, 193 Ill. 2d 186 (2000), for the proposition that through contract one can voluntarily undertake a duty to a person who was not a party to the contract. The plaintiff in *Berg* was assaulted in the parking lot of the building where she worked. She sued the property owner, Podolsky, and the company with which Podolsky contracted to provide security services for the property, Allied Security, Inc. (Allied). The court found that the contract between Podolsky and Allied showed that Podolsky and Allied jointly agreed upon the activities Allied was to perform. *Berg*, 297 Ill. App. 3d at 900. Among other things, Allied's orders to its guards stated that one of the guards' primary functions was to "[k]eep unauthorized people from the property to reduce the risk of theft, vandalism and *assault*." (Emphasis in original.) *Berg*, 297 Ill. App. 3d at 900. After considering all of the relevant facts, the court in *Berg* concluded that "Podolsky and Allied voluntarily entered into a contract, the terms of which constituted a voluntary assumption on the part of both defendants to protect plaintiff from the criminal acts of third parties on the premises." *Berg*, 297 Ill. App. 3d at 901.

It appears to us that the court in *Berg* essentially held that the plaintiff was an intended beneficiary of the contract between the defendants without characterizing the plaintiff as a third-party beneficiary or applying a third-party beneficiary analysis. In our view, this approach muddies the waters of voluntary undertaking in tort by failing to distinguish between the two separate concepts of voluntary undertaking and assuming a duty to a third party through contract. Thus, we decline to follow the commingled rationale of *Berg*. We further conclude that, even if we did agree with the court's analysis in *Berg*, that case would be factually distinguishable from the case before us.

The defendants in *Berg* expressly agreed in their contract to provide security services that included the protection of third parties. There was no similar express agreement between Clark and MHS that MHS would notify customers of safety improvements to the Clark forklifts or that the parties in any way intended to assume a duty toward plaintiff's decedent. In the case before us, the portions of the dealer sales agreement plaintiff relies upon do not show any intent to benefit the equipment user or owner.

We also find distinguishable the cases plaintiff cites involving construction contracts in which a defendant agreed to be generally responsible for construction site safety. No analogous agreement existed in the contract between MHS and Clark. Certainly, MHS did not agree to be responsible for the safety of its customers' employees. Nor did MHS agree to transmit information from Clark to its customers. The evidence did not show that MHS always communicated information from Clark to its customers. To the contrary, when Clark wanted to make sure its customers obtained the first phase of safety seats, Clark contacted the customers directly. For these reasons, we hold that the terms of the dealer sales agreement did not impose a duty upon MHS as to plaintiff's decedent as a third-party beneficiary under the contract.

■ Plaintiff also argues that Clark's specific instructions to MHS established a voluntary undertaking. This argument fails for two reasons. First, the essential element of the voluntary undertaking doctrine is an "undertaking." *Bailey v. Edward Hines Lumber Co.*, 308 Ill. App. 3d 58, 66 (1999). Our research has not revealed any Illinois authority that defines "voluntary undertaking." Black's Law Dictionary defines "undertaking" as "[a] promise, pledge, or engagement." Black's Law Dictionary 1528 (7th ed. 1999). It defines "undertake" as:

> "1. To take on an obligation or task ***. 2. To give a formal promise; guarantee ***. 3. To act as a surety for (another); to make oneself responsible for (a person, fact, or the like) ***." Black's Law Dictionary 1527-28 (7th ed. 1999).

These definitions suggest that voluntarily undertaking a duty requires some sort of affirmative acknowledgment or recognition of the duty by the party who undertakes the duty; in other words, there must be a showing of the party's intent to undertake the duty. The argument that Clark issued instructions to MHS improperly focuses on Clark's actions. Even if Clark did instruct MHS to inform all of its customers about the universal seat, plaintiff has not established that MHS accepted the responsibility of carrying out Clark's instructions. The passive receipt of Clark's "instructions," without more, is not enough to establish that MHS voluntarily undertook the obligation of notifying its customers regarding the universal seat.

■ Plaintiff next contends that evidence regarding custom and practice between Clark and MHS established a voluntary undertaking. MHS responds that the cases plaintiff cites hold that custom and practice are relevant to the question of what standard of care a defendant owes, but that custom and practice do not create a duty. In her reply brief, plaintiff cites the following language from *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 331 (1965):

> "Strictly speaking, the question is not one of duty, for '*** in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.' [Citation.] 'By the great weight of modern American authority a custom either to take or omit a precaution is generally admissible as bearing on what is proper conduct under the circumstances, but is not conclusive.' [Citation.] Custom is relevant in determining the standard of care because it illustrates what is feasible, it suggests a body of knowledge of which the defendant should be aware, and it warns of the possibility of far-reaching consequences if a higher standard is required." *Darling*, 33 Ill. 2d at 331.

Plaintiff misconstrues the court's holding in *Darling*. In that case the court did not address the issue of whether the defendant owed a duty to the plaintiff. Rather, the issue was what evidence was proper on the standard of care required on the part of the defendant hospital. As the quote above indicates, the supreme court held that evidence of custom and practice is relevant in determining the applicable standard of care. In the case before us, the question is not whether MHS met the standard of care, but whether MHS owed a duty to the plaintiff. One does not reach the standard of care question until a duty has been established. Thus, we cannot agree with plaintiff that the supreme court has held that evidence of custom and practice may establish a duty.

Moreover, the custom and practice evidence plaintiff relies upon does not demonstrate any undertaking by MHS with respect to plaintiff's decedent. Plaintiff cites memos from Clark to MHS informing MHS that disseminating information about the universal seat would provide MHS with a good opportunity to sell equipment, parts, and services to existing customers. Plaintiff argues that it would be illogical to conclude that MHS would have disregarded Clark's recommendations. Plaintiff's argument misses the point, however. The issue is whether MHS *did* anything that demonstrated an intent to undertake a duty to notify, not whether MHS should have done something as a good business practice. Plaintiff has not presented evidence of any act, conversation, or writing that establishes an undertaking.

■ Plaintiff's last argument is that this court should recognize a common-law duty to notify of postsale safety improvements limited to the facts of this case. Plaintiff acknowledges that, in *Modelski v. Navistar International Transportation Co.*, 302 Ill. App. 3d 879 (1999), the court rejected a similar suggestion.

In *Modelski*, the plaintiff's decedent was killed in an accident involving a tractor manufactured by Navistar. One of the plaintiff's allegations, which the trial court struck, was that Navistar was negligent for failing to retrofit the tractor after its sale with a safety device that would have eliminated the hazard that caused the accident. The trial court held:

"If the plaintiff meant to charge Navistar with negligence for failing to retrofit the tractor to remedy a hazard of which it did not know, nor should it have known, until after the tractor was sold, then the allegation failed for want of duty and was properly stricken." *Modelski*, 302 Ill. App. 3d at 889.

The court noted that, absent a statutory obligation or voluntary undertaking to retrofit, no Illinois case has imposed upon a manufacturer a duty to retrofit or recall where the allegedly dangerous condition was not discovered until after the product was sold. *Modelski*, 302 Ill. App. 3d at 889. The court then commented on the significant burden such a duty would impose on manufacturers:

"The consequences of imposing upon manufacturers an extrastatutory duty to recall and retrofit used products to incorporate postsale state-of-the-art designs would be the equivalent of mandating that manufacturers insure that their products will always comply with current safety standards. This we are unwilling to do. If such a continuing duty is to be imposed, it is the legislature that is better suited to the task. In a legislative setting, due consideration can be given to the type of products to which such a duty would apply

and to whether a statute of repose should be enacted to limit the potentially infinite duration of the duty." *Modelski*, 302 Ill. App. 3d at 889.

We agree with the court's reasoning in *Modelski*. The duty plaintiff urges this court to create would impose upon distributors a continuous duty to inform customers of manufacturers' safety improvements for products that are not defective or unreasonably dangerous as built. Contrary to plaintiff's assertion, this would be a heavy burden. The court in *Modelski* correctly determined that the decision whether to impose such a duty is better left to the legislature.

Accordingly, we affirm the trial court's award of summary judgment for MHS because MHS did not have a duty and did not voluntarily undertake a duty to notify forklift owners or operators that a universal safety seat was available for the CFY20 forklift.

Affirmed.

HUTCHINSON, P.J., and McLAREN, J., concur.