NO. 4-06-0340    Filed 5/2/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| JASON A. SHANK, | ) | Appeal from |
|---|---|---|
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Champaign County |
| H.C. FIELDS, | ) | No. 02L20 |
| Defendant, | ) | |
| and | ) | Honorable |
| CHAMPAIGN ASPHALT COMPANY, | ) | Michael Q. Jones, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Jason A. Shank, appeals the circuit court's entry of summary judgment in favor of defendant Champaign Asphalt Company (Champaign Asphalt).  We affirm.

I. BACKGROUND

On May 25, 2001, Champaign Asphalt was doing road-construction work on Interstate Highway 74, near exit 192, in Champaign County, Illinois.  Champaign Asphalt's contract with the Illinois Department of Transportation (IDOT) incorporated IDOT's standard specifications, one of which was that all lanes of traffic shall be open on any legal holiday period, including the Friday before Memorial Day, beginning at 3 p.m.  May 25, 2001, was the Friday before Memorial Day.  A major multivehicle accident occurred on that date at approximately 3:35 p.m.  Only one of the highway's right two lanes of traffic was open.  The reason for the delay was that conveyor-type equipment being used

to remove debris from the highway, an "Athey loader," unexpectedly broke down.

At the time of the accident, traffic, which was required to merge from two lanes to one lane, was backed up for 1.34 miles. Rex A. Nichols, driving a semi-truck with a 40,000-pound load, struck the line of vehicles, hitting the car in which plaintiff was a passenger and the car driven by defendant H.C. Fields. Nichols had been driving about 57 miles per hour and, according to witnesses, did not reduce his speed before colliding with the vehicles. The road was level and the weather was clear. Nichols knew in advance that traffic would be stalled due to road construction; he had driven that same stretch of highway three times in the last two months and he was warned over his radio an hour in advance. The proper traffic-control devices were in place for the lane closure. Cautionary road-construction signs indicated an upcoming lane merger in three miles and two miles, respectively. Lane-closure signs were also one-half mile before the construction zone.

Plaintiff was seriously injured in the accident. Plaintiff's parents entered into a settlement agreement with Nichols and his employer in the amount of $427,500. Subsequently, upon reaching the age of majority, plaintiff brought this action against Champaign Asphalt. Count I, sounding in negligence, alleged that Champaign Asphalt failed in its duty to

- 2 -

reopen all lanes of traffic by 3 p.m., resulting in the injury to plaintiff. Count II, sounding in contract, alleged that plaintiff was a third-party beneficiary of the contract between IDOT and Champaign Asphalt requiring that all lanes of travel be open from 3 p.m. on May 25, 2001, to midnight on May 28.

IDOT had imposed a monetary sanction for a lane closure the weekend of May 11-13. A May 24 memo states that the reason for the sanction was that Champaign Asphalt was given the opportunity to work Saturday to remove the lane closure and declined to do so. In a May 23 memo, IDOT complained that Champaign Asphalt worked after dark on Friday, May 18, and did not remove traffic control and open the lane until 9:30 p.m. The memo also discussed a May 3 incident, where Champaign Asphalt had worked 45 minutes after dark and been warned that work after dark would not be paid for. "It would be better to quit for the day, and discard any asphalt, than to risk an accident or injury." The memo further stated, "It had been previously discussed that, in extreme circumstances, if the lanes could not be opened by 3:00 p.m. on Friday, Champaign Asphalt would be allowed to work on Saturday to remove hazards and open the lane."

Champaign Asphalt filed a motion for summary judgment. The trial court granted the motion, stating:

> "The day was clear; IDOT did have the required warning signs posted; Mr. Nichols had

been down this road before and was, should have been aware of the construction work; Mr. Nichols didn't slow down, but plowed into a stationary car. These things, I think, are not in dispute; and I believe they add to the conclusion that the Court is compelled to draw, which is the alleged negligence of Champaign Asphalt did nothing more than create a condition making this accident possible; and the intervening negligence of Mr. Nichols broke that causal chain; and therefore, it was the sole proximate cause."

The court also stated that the facts and the inferences to be drawn therefrom failed to demonstrate duty or breach of duty. Plaintiff appeals.

## II. ANALYSIS

Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). "To succeed in an action for negligence, a plaintiff must prove facts that establish the existence of a duty, a breach of the duty, and an injury to the plaintiff [that]

- 4 -

was proximately caused by the breach."  Hills v. Bridgeview Little League Ass'n, 195 Ill. 2d 210, 228, 745 N.E.2d 1166, 1178 (2000).

## A. Duty

As to count I, plaintiff argues that it is foreseeable that accidents will occur when traffic lanes are closed, and therefore Champaign Asphalt had a duty to have the lane open.

Whether a duty of care exists is a question of law, which must be resolved by the court.  O'Hara v. Holy Cross Hospital, 137 Ill. 2d 332, 337, 561 N.E.2d 18, 20 (1990).  When "considering whether a duty exists in a particular case, a court must weigh the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against [the injury,] and the consequences of placing that burden on the defendant."  Gouge v. Central Illinois Public Service Co., 144 Ill. 2d 535, 542, 582 N.E.2d 108, 112 (1991); Kirk v. Michael Reese Hospital & Medical Center, 117 Ill. 2d 507, 526, 513 N.E.2d 387, 396 (1987).  "[F]oreseeability alone provides an inadequate foundation upon which to base the existence of a legal duty." Ward v. K mart Corp., 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226 (1990).

The issues of duty and proximate cause are interrelated, and in many ways, it is possible to deal with most of the issues that arise in a negligence case in terms of duty.  W.

Keeton, Prosser & Keeton on Torts §53, at 356 (5th ed. 1984). In fact, approaching negligence cases from the duty prong may be preferable because such an approach directs the court's attention to policy issues that determine the extent of the original obligation and away from the "mechanical" sequence of events that goes to make up causation in fact. W. Keeton, Prosser & Keeton on Torts §42, at 274 (5th ed. 1984).

Many Illinois cases have refused to impose a duty in situations where an accident was foreseeable. It is not a breach of duty to supply electricity to a community knowing that, over time, electrocution is likely. "The benefits of electricity outweigh the disadvantages." Tinder v. Illinois Power Co., 325 Ill. App. 3d 606, 610, 758 N.E.2d 483, 487 (2001). Employers do not have the duty to insure that their employees working long overtime hours drive home safely and sufficiently rested. The burden of placing that duty on employers would be enormous and outweigh any benefits. Behrens v. Harrah's Illinois Corp., 366 Ill. App. 3d 1154, 1157-58, 852 N.E.2d 553, 556 (2006). Munici-palities are not required to build medians that would be suffi-cient to prevent a drunk driver from crossing over into oncoming traffic. "[T]he magnitude of guarding against this injury and the consequences of placing that burden on defendant would be too great." In re Estate of Elfayer, 325 Ill. App. 3d 1076, 1082, 757 N.E.2d 581, 586 (2001). A utility owes no duty to insure

- 6 -

that if an automobile leaves the traveled portion of a roadway and strikes a utility pole, the pole will fall away from the highway.  Gouge, 144 Ill. 2d at 544, 582 N.E.2d at 112.

Road-construction projects make travel conditions more dangerous for motorists, and accidents are certainly foreseeable.  But what is the alternative?  Not repairing the roads?  Completely closing any highway that is undergoing repairs?  The magnitude of the burden of preventing reckless drivers from causing harm and the consequences of placing that burden on the defendant doing the work justify a finding of no duty in this case.  Certainly highway authorities have a duty to act reasonably in preventing harm to the public, even harm caused by third-party negligent drivers.  Champaign Asphalt complied with that general duty here, by posting all the required warning signs.  Plaintiff argues for an absolute specific duty that all lanes be open by 3 p.m.  Champaign Asphalt was required by its contract to attempt to have all lanes open by 3 p.m., but Champaign Asphalt would not have acted reasonably if it had opened the lanes before they were ready.  Under plaintiff's theory, Champaign Asphalt had no duty a minute before 3 p.m. but had a duty a minute after 3 p.m.  A court's determination whether a duty exists should not be so uncertain.  The provisions at issue here should not make Champaign Asphalt liable for every accident that might have occurred after 3 p.m.  We may consider the provisions of the

contract in determining the standard of care, but they are not controlling in our determination whether a legal duty exists.

## B. Cause

Plaintiff argues that not opening the second lane by 3 p.m. was the proximate cause of his injury.

Proximate cause has two components:  (1) cause in fact and (2) legal cause.  First Springfield Bank & Trust v. Galman, 188 Ill. 2d 252, 257-58, 720 N.E.2d 1068, 1072 (1999).  "Cause in fact" requires the plaintiff to show that defendant's negligence was the actual cause of his injury; "but for the defendant's conduct, the accident would not have occurred."  McCraw v. Cegielski, 287 Ill. App. 3d 871, 873, 680 N.E.2d 394, 396 (1996).  "Cause in fact" is not enough to impose liability.  The fact that an accident would not have happened, but for a child's request that her mother drive her to school, is not enough to impose liability on the child.  Tinder, 325 Ill. App. 3d at 609, 758 N.E.2d at 486.  There must also be "legal cause."

"Legal cause" can be established only if a defendant's acts are "'so closely tied to the plaintiff's injury that he should be held legally responsible for it.'"  Simmons v. Garces, 198 Ill. 2d 541, 558, 763 N.E.2d 720, 732 (2002), quoting McCraw, 287 Ill. App. 3d at 873.  "The question is one of public policy-- How far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm?"  Young v. Bryco Arms,

- 8 -

213 Ill. 2d 433, 446, 821 N.E.2d 1078, 1086 (2004). In <u>Young</u>, the supreme court held that the defendants' lawful manufacture and sale of handguns was not the legal cause of harm brought about by the intervening criminal acts of third parties. <u>Young</u>, 213 Ill. 2d at 454-55, 821 N.E.2d at 1090-91. Although a police officer's conduct in following a suspect may have served as the impetus ("cause in fact") for the suspect to flee the scene, there was no "legal cause" where the officer was stuck in traffic 20 to 25 cars behind the suspect, keeping a safe distance and driving at a constant speed, when the suspect drove up onto the sidewalk and struck the plaintiff. <u>Wade v. City of Chicago</u>, 364 Ill. App. 3d 773, 784, 847 N.E.2d 631, 641 (2006).

The cases have distinguished between conduct that is the cause of an accident, and conduct that does nothing more than furnish a passive condition by which the injury is made possible. <u>Galman</u>, 188 Ill. 2d at 257, 720 N.E.2d at 1071. The doctrine has been criticized but is recognized to have validity where the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes. "But even in such cases, it is not the distinction between 'cause' and 'condition' which is important, but the nature of the risk and the character of the intervening cause." W. Keeton, Prosser & Keeton on Torts §42, at 278 (5th ed. 1984).

It is not clear this accident would not have happened,

- 9 -

"but for" the lane being closed.  It is possible that traffic would have been backed up even if the lanes were open.  As noted by the trial judge, it is fair to infer the traffic backup did not suddenly materialize at exactly 3 p.m.  A completely inattentive driver is a threat at any time, even if traffic is slow-moving but not stopped.  Even if we assume the accident would not have happened "but for" the closure, that is not enough for liability.  The accident would not have happened if the authorities had not built the road in the first place, but that also is no basis for liability.

"Legal cause" is required for the imposition of liability, and there was no "legal cause" in this case.  The failure to have both lanes open was not so closely tied to plaintiff's injury that Champaign Asphalt should have responsibility for it.  As the trial court found, the failure to have the lane open was only a condition that allowed this accident to happen, not a cause.  The actions of Champaign Asphalt in closing the lane did not promote or encourage Nichols to act in the way he did.  Cf. Long v. Friesland, 178 Ill. App. 3d 42, 55-56, 532 N.E.2d 914, 923 (1988) (allowing brush to overhang road would force driver to cross centerline); Yates v. Shackelford, 336 Ill. App. 3d 796, 804, 784 N.E.2d 330, 336 (2002) (distinguishing cases where alleged intervening act was not an unreasonable response).  Champaign Asphalt should not be the insurer of every accident

that happened while a lane was closed.

## C. The IDOT Contract

Count II of Shank's complaint alleges that he was a third-party beneficiary of the contract between Champaign Asphalt and IDOT, and Champaign Asphalt accordingly owed him a duty to open all lanes by 3 p.m. A third party may only sue for breach of contract if the contract was entered into for the party's direct benefit; if the third party's benefit is merely incidental, he has no right of recovery on the contract. Yakubinis v. Yamaha Motor Corp., U.S.A., 365 Ill. App. 3d 128, 140, 847 N.E.2d 552, 563 (2006). There is a strong presumption against creating contractual rights in third parties. Estate of Willis v. Kiferbaum Construction Corp., 357 Ill. App. 3d 1002, 1007, 830 N.E.2d 636, 642 (2005).

Count II does not seek typical contract relief but seems more to allege the voluntary assumption of a duty in negligence. See Bourgonje v. Machev, 362 Ill. App. 3d 984, 1000, 841 N.E.2d 96, 110-11 (2005); see also Rogers v. Clark Equipment Co., 318 Ill. App. 3d 1128, 1134, 744 N.E.2d 364, 368 (2001) (mistake to muddy waters of voluntary undertaking by failing to distinguish between two separate concepts of voluntary undertaking and assuming a duty to a third party through contract).

The contract incorporated IDOT's "Standard Specifications for Road and Bridge Construction," including a provision

- 11 -

entitled "Public Convenience and Safety":

> "No broken pavement, open holes, trenches,
> barricades, cones, or drums will remain on
> or adjacent to the traveled way and all
> lanes shall be open to traffic during any
> legal holiday period, except where stage
> construction with traffic control is pro-
> vided.  *** The legal holidays include: ***
> Memorial Day *** 3 p.m. Friday [to] 12
> midnight Sunday."

The Fifth District has held that a road contractor working on a nearby bridge had a duty not to obstruct a grassy median with concrete barrier segments, which were later struck by a vehicle that lost control and left the roadway.  In imposing that duty, the court relied on IDOT guidelines included in construction contracts that prohibited obstructing the median in general and required guardrails if there was a necessary obstruction.  Vosbein v. E.T. Simonds Construction Co., 295 Ill. App. 3d 427, 432, 693 N.E.2d 500, 503 (1998).  Presiding Justice Welch dissented, noting that the question was whether the law imposed a duty, and industry standards, while evidence of a standard of care, do not create such a relationship.  Vosbein, 295 Ill. App. 3d at 435, 693 N.E.2d at 506 (Welch, P.J., dissenting).  In any event, Vosbein involved a situation different from our case.

There is a difference between allowing unguarded open holes, trenches, or barricades on or adjacent to a highway and closing a lane to traffic after posting proper warnings. An unguarded open hole is a danger even to careful drivers; a properly marked lane closing is only a danger when encountered by a completely inattentive driver.

It is useful to compare this case involving IDOT's standard specifications to cases involving general department directives for police officers. Violation of self-imposed rules or internal guidelines, such as police department general orders, do not normally impose a legal duty, let alone constitute evidence of negligence. Wade, 364 Ill. App. 3d at 781, 847 N.E.2d at 639 ("pursuit," contrary to guidelines, in an unmarked vehicle without notifying dispatcher).

> "Where the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines. Rather, it is the law which, in the end, must say what is legally required. See Blankenship v. Peoria Park District, 269 Ill. App. 3d 416, 422[, 647 N.E.2d 287, 291] (1994) (park district's internal rules requiring one lifeguard to remain on duty at all times did not create a legal duty to have one lifeguard on duty);

Fillpot v. Midway Airlines, Inc., 261 Ill. App. 3d 237, 244[, 633 N.E.2d 237, 242] (1994) (where airline owed no legal duty to remove snow or ice, airline's policy manual requiring the clearing of walkways did not create such a duty); Mattice v. Goodman, 173 Ill. App. 3d 236, 240[, 527 N.E.2d 469, 472] (1988) (where building owners owed no legal duty to assist elderly person through door, no such duty was created by building owner's employ-ment of an employee who, in accordance with his job description, customarily assisted elderly persons through the door)." Rhodes v. Illinois Central Gulf R.R., 172 Ill. 2d 213, 238, 665 N.E.2d 1260, 1272 (1996) (no duty to promptly assist intoxicated individual dis-covered in warming house of commuter train system).

The requirement in this case that "all lanes shall be open to traffic during any legal holiday period" appears to relate more to public convenience, traffic flow, than it does to safety. There was no requirement that lanes be opened whenever traffic began to back up. The traffic backup that occurred in this case could easily have occurred on a nonholiday. A similar

- 14 -

analysis was made in <u>Rowe v. State Bank of Lombard</u>, 125 Ill. 2d 203, 531 N.E.2d 1358 (1988).  The outside lighting and buzzers at the property were not provided for security but, instead, are common for apartment buildings as a convenience.  Their installation at the property cannot reasonably be regarded as an assumption of a duty to protect against third-party criminal acts.  <u>Rowe</u>, 125 Ill. 2d at 218, 531 N.E.2d at 1365.

Plaintiff cites our decision in <u>Moss v. Rowe Construction Co.</u>, 344 Ill. App. 3d 772, 801 N.E.2d 612 (2003), to support his argument that a legal duty for purposes of negligence was created by the contract between Champaign Asphalt and IDOT.  <u>Moss</u> began with the rule that a general contractor was not liable for the work of a subcontractor unless the general contractor retained control of some part of the work, and it was not enough for liability that the general contractor had some general right, for example to order the work stopped.  <u>Moss</u>, 344 Ill. App. 3d at 777-78, 801 N.E.2d at 616.  Under the contract in <u>Moss</u>, the general contractor was required to maintain control of safety on the project, which we held to be a retention of control of some part of the work, making the general contractor responsible for the actions of the subcontractor.  The <u>Moss</u> contract did not create a duty in negligence where none had existed before; the contract simply designated who had that duty, who retained the control of some part of the work.  The plaintiff's right to

- 15 -

protection under the contract was never at issue; the question was whether the duty was owed by the general contractor, the subcontractor, or both.  See Moss, 344 Ill. App. 3d at 780, 801 N.E.2d at 617-18.

## III. CONCLUSION

The trial court properly concluded that Champaign Asphalt had no duty, either as a matter of general legal principle or by virtue of its contract with IDOT, to prevent the independent intervening act that occurred here.  The trial court properly concluded that Champaign Asphalt's conduct was not a proximate cause of the injuries to plaintiff.  Accordingly, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, P.J., concurs.

MYERSCOUGH, J., specially concurs.

JUSTICE MYERSCOUGH, specially concurring:

Although I agree in the outcome reached by this court, I disagree with the majority's conclusion that Champaign Asphalt owed no duty to plaintiff to open the lanes at 3 p.m. despite the provision in its contract that provides that it must have all lanes open by 3 p.m. I believe that Champaign Asphalt did owe plaintiff a duty. That duty was to exercise reasonable care in carrying out its construction on a public highway. However, I also believe that Champaign Asphalt was not negligent in failing to open all the lanes by 3 p.m. The majority states that Champaign Asphalt "would not have acted reasonably" if it had opened the lanes before it were ready. Slip op. at 7. Whether Champaign Asphalt acted reasonably is not a duty question, but rather a question of breach. See J. Goldberg & B. Zipursky, The Restatement (Third) & the Place of Duty in Negligence Law, 54 Vand. L. Rev. 657, 713-15 (2001) (courts, both knowingly and unwittingly, sometimes decide what are surely breach questions under the guise of deciding the question of "duty" in its primary sense). If

- 17 -

Champaign Asphalt had no duty, as the majority concludes, whether it acted reasonably would be immaterial.

Champaign Asphalt owed a general duty of care to the motorists on the highway.  Section 107.09 of the specifications in Champaign Asphalt's contract with IDOT states:

"The Contractor shall at all times conduct the work in such a manner as to ensure the least obstruction to vehicular and pedestrian traffic.  The convenience of the general public and residents along the highway shall be provided for in an adequate and satisfactory manner.  ***  No broken pavement, open holes, trenches, barricades, cones, or drums will remain on or adjacent to the traveled way and all lanes shall be opened to traffic during any legal holiday period, except where stage construction with traffic control is provided."

The specifications in the contract designated that the holiday period at issue in this case began at 3 p.m. on Friday. Section 107.14 of the specifications in the contract states:

"When work zone traffic control is required along the route under construction, or when any section of road is closed for construc-

- 18 -

tion operations of any type, or when any sec-

tion of the road is opened to traffic prior

to completion of all work, the Contractor

shall protect the workers and provide for

safe and convenient public travel by provid-

ing adequate traffic control."

Champaign Asphalt assumed the duty to use reasonable care for the safety of the motorists on the highway by virtue of the contract. See Moss, 344 Ill. App. 3d at 779, 801 N.E.2d at 617 (stating that the construction company's contract with IDOT established a duty to control safety); Chandradat v. State, Indiana Department of Transportation, 830 N.E.2d 904, 909 (Ind. 2005) ("The State [Indiana] has a general duty to the traveling public to exercise reasonable care in the design, construction, and maintenance of its highways for the safety of public users. [Citation.] The [plaintiffs] were part of the traveling public. Furthermore, by statute, an Indiana governmental agency that is responsible for the signing, marking, and erection of traffic control devices on streets and highways within Indiana has a duty to follow the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways ('Traffic Manual'). [Citation.] While the Traffic Manual is not a legal basis for a statutory negligence action [citation], the Traffic Manual is evidence bearing upon the general duty to exercise reasonable care").

The terms of Champaign Asphalt's contract with IDOT in this case, therefore, serve as evidence of the standard of care to be employed when conducting construction projects on a public road. Snyder v. Curran Township, 167 Ill. 2d 466, 472, 657 N.E.2d 988, 992 (1995) ("In light of the applicable regulations and statutes, we agree with the plaintiffs that the issue of compliance or noncompliance with the Illinois Manual was a question properly before the jury. Section 11-304, by mandating compliance with the Illinois Manual, establishes defendant's duty of reasonable care. Whether that duty was breached is a jury question, turning on an examination of the applicable provisions of the Illinois Manual and the facts of a particular case"); Indiana State Highway Comm'n v. Daily Express, Inc., 503 N.E.2d 1237, 1240 (Ind. 1987) ("We held that the [Indiana State Highway Manual] is only evidence bearing upon the general duty to exercise reasonable care. [Citation.] Accordingly, if a failure to comply with the Manual's provisions is only evidence of negligence, the jury should be instructed to treat the Manual as any other evidence of negligence going into the ultimate factual determination of liability" (emphasis in original)). Not complying with the provisions of the contract in this case may constitute a breach of this duty if defendant's failure to comply was unreasonable.

The majority states that if the contract's provision to have all lanes open by 3 p.m. constituted a legal duty, it would

- 20 -

result in Champaign Asphalt being held liable for accidents that occur after 3 p.m. but not liable for accidents that occurred before 3 p.m. The majority characterizes this as creating an "uncertain" duty. Slip op. at 7. However, nothing is uncertain about the duty to comply with a specific provision in the contract. Moreover, the provision in the contract that requires all the lanes to be open by 3 p.m. does not create strict liability. Champaign Asphalt may even be liable for accidents that occur before 3 p.m. if it failed to act with due care for the safety of the public in carrying out its construction work. After 3 p.m., Champaign Asphalt may also be liable for accidents that occur if its failure to open all of the lanes as required was unreasonable.

Additionally, using the terms of construction companies' contracts with IDOT as evidence of the standard of care construction companies should exercise while performing work on public highways does not create an undue burden. In determining whether a legal duty exists, courts consider the following factors: (1) the reasonable foreseeability of injury, (2) the reasonable likelihood of injury, (3) the magnitude of the burden that guarding against injury places on the defendant, and (4) the consequences of placing that burden on the defendant. Miller v. Highway Commissioner of North Otter Township Road District, 344 Ill. App. 3d 1157, 1164, 801 N.E.2d 599, 606 (2003).

In its analysis of the policy considerations involved

- 21 -

in determining whether Champaign Asphalt owed plaintiff a duty in this case, the majority states, "The magnitude of the burden of preventing reckless drivers from causing harm and the consequences of placing that burden on the defendant doing the work justify a finding of no duty in this case." Slip op. at 6. However, the duty question in this case is not whether Champaign Asphalt had a duty to protect against reckless drivers causing harm. Rather, the duty was to have the roadway clear by 3 p.m. at the beginning of a holiday weekend that is associated with high volumes of highway traffic. It is certainly foreseeable and likely that this type of accident could result from a congested and backed-up highway during a period of heavy traffic. Considering the third and fourth prongs in Miller, clearing the highway by 3 p.m. was not a burden on Champaign Asphalt. Had its machine not broken, it would have had all the lanes open on the highway by 3 p.m. Finally, given that IDOT requires the construction company to be off the highway by 3 p.m. on a holiday weekend unless it obtained special permission from IDOT, placing the foreseeable consequences for accidents that result from the company's failure to clear the highway is not unreasonable. Holding construction companies liable for reckless drivers, as the majority suggests, would be unsound public policy. The benefits of road construction to society are great and holding companies who perform such tasks liable for all accidents that result is too high of a burden.

However, Champaign Asphalt had a duty to exercise due care in carrying out its project. It is sound policy to require companies performing work on public roads to exercise due care in performing their task. In this case, Champaign Asphalt did exercise due care even though it was not off the highway by 3 p.m. However, if evidence had been presented that it had not acted reasonably, it may have been liable for causing this type of accident that resulted from the highway congestion caused by its lane closure.

The majority makes the distinction that the contract provision regarding the lane closures was concerned with traffic flow during a holiday weekend as opposed to a safety provision. The majority's distinction between a contract provision rooted in safety and a contract provision rooted in convenience should not be dispositive of whether Champaign Asphalt owed a legal duty to the motorists on the highway.

A provision in the contract incorporates the guidelines of the IDOT manual that includes the requirement that Champaign Asphalt be off the road by 3 p.m. Although the contract provision is not a statute or an administrative rule, it is an agency-created regulation. I conclude public policy supports a finding that failure to abide by this regulation may create liability on the part of Champaign Asphalt. The supreme court has held in order for a plaintiff to recover for injuries sustained as a result of a failure to follow a statute or rule the plaintiff must

show "(1) the violation proximately caused the injury; (2) plaintiff belonged to the class of persons whom the rule was intended to protect from injury; (3) the kind of injury suffered by plaintiff was the kind of injury which the rule sought to prevent." Gouge v. Central Illinois Public Service Co., 144 Ill. 2d 535, 543, 582 N.E.2d 108, 112 (1991).

The first two prongs of the test in Gouge are easily met. First, but for the backup on the highway, this accident would not have occurred. Second, the rule is for the convenience and safety of the drivers on the highway, a class of persons to which decedent belonged. With respect to the third prong in Gouge, even if IDOT's primary interest in having a contract provision providing that all the lanes be open by 3 p.m. was primarily a concern about traffic flow, motorists' safety is always a consideration in making decisions to impede traffic on a public road. Making a distinction between provisions in a road construction contract based on whether the provision is primarily for safety or if it is primarily for convenience creates confusion in the law. Construction companies' liability in tort should not rest on such a distinction. Whether the guidelines set by IDOT are for safety or convenience, construction companies should be held to those standards in determining liability.

Having determined that Champaign Asphalt owed plaintiff a duty to exercise reasonable care in performing work on a public

road, I conclude the issue in this case is whether Champaign Asphalt breached this duty. Although the issue of whether a defendant breached its duty is usually a factual matter reserved for the fact finder, summary judgment is proper when there is no genuine issue of material fact regarding defendant's alleged breach. Espinoza v. Elgin, Joliet & Eastern Ry. Co., 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995).

As part of our de novo review of this case, relying on the undisputed facts, Champaign Asphalt was entitled to judgment as a matter or law. The facts of this case reveal that two days before the accident, May 23, 2001, Champaign Asphalt received a memo from IDOT that said "It has been previously discussed that, in extreme circumstances, if the lanes could not be opened by 3:00 p.m. on Friday, Champaign Asphalt would be allowed to work on Saturday to remove hazards and open the land." The facts also reveal that the machine used to remove debris from the highway unexpectedly broke, and opening the lanes would have created an increased hazard to the motorists on the highway due to the presence of debris. Therefore, although Champaign Asphalt had a duty to abide by its contract, which required that the lanes be open by 3 p.m. that afternoon, it did not breach that duty because it acted reasonably under the circumstances. Opening the lanes before the debris was removed would have been unreasonable since it created a greater hazard to the motorists on the highway.

Therefore, Champaign Asphalt's decision not to open the lanes by 3 p.m. due to the debris was objectively reasonable and, as a matter of law, cannot constitute a breach of its duty.

Most troubling to me is the precedent that may result from the holding in this case. Although the majority and I agree that Champaign Asphalt acted reasonably, I believe that setting the precedent that construction companies have no duty to comply with the terms of its contracts with IDOT sets a dangerous and undesirable precedent. In Marshall v. Burger King Corp., 222 Ill. 2d 422, 424, 856 N.E.2d 1048, 1050 (2006), decedent was killed when an out-of-control car crashed through the window of the Burger King restaurant where he was eating. Decedent's estate sued Burger King for negligence based on the fact that there were no safety devices in place to prevent this type of accident. The supreme court addressed the appellate court's finding of no duty as follows:

> "'Rules declaring that no duty exists can
> easily be made too broad or too narrow. Be-
> cause they are rules of law, not decisions
> about particular cases, they cover all cases
> in the category to which they are addressed.
> They are expressions of "global" policy
> rather than evaluations of specific facts of
> the case. Consequently, no-duty rules should

be invoked only when all cases they cover fall substantially within the policy that frees the defendant of liability.'"    _Marshall_, 222 Ill. 2d at 441-42, 806 N.E.2d at 1060, quoting 1 D. Dobbs, Torts §227, at 579 (2001).

The court in _Marshall_ held that by defining the duty narrowly, defendants were actually asking the court to decide as a matter of law that they did not breach its duty.  The court found that instead of defendant owing a fact-specific duty to install poles at its restaurants, defendants owed a general duty to exercise reasonable care for the safety of its customers.  _Marshall_, 222 Ill. 2d at 443, 856 N.E.2d at 1061.  The supreme court held:

> "It is inadvisable for courts to conflate the concepts of duty and breach in this manner. Courts could, after all, 'state an infinite number of duties if they spoke in highly particular terms,' and while particularized statements of duty may be comprehensible, 'they use the term duty to state conclusions about the facts of particular cases, not as a general standard.'"  _Marshall_, 222 Ill. 2d at 443, 856 N.E.2d at 1061, quoting 1 D. Dobbs,

Torts §226, at 577 (2001). See also 54 Vand. L. Rev. at 712-17 (discussing problems associated with using the duty element of negligence to render decisions that no breach occurred as a matter of law).

In this case, holding that defendant did not have a specific duty to open all the lanes of the highway by 3 p.m. creates the situation in which a similar defendant who unreasonably does not comply with the terms of its contract with IDOT may escape liability when its conduct was unreasonable and caused an injury to a third person.  For these reasons, I concur in the result reached by the majority, but not its reasoning.