# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Slepicka v. State of Illinois, 2013 IL App (4th) 121103**

---

| | |
|---|---|
| Appellate Court Caption | MARY SLEPICKA, By and Through JoANN KAMINSKI, Her Agent and Attorney-in-Fact, Plaintiff-Appellant, v. THE STATE OF ILLINOIS, Acting Through THE DEPARTMENT OF PUBLIC HEALTH, TERESA GARATE, Ph.D., Its Assistant Director, and LaMAR HASBROUCK, MD, MPH, Its Director; and HOLY FAMILY VILLA, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-1103 |
| Filed<br>Rehearing denied | September 12, 2013<br>October 17, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the Department of Public Health's service of a notice of involuntary transfer or discharge of plaintiff from a Cook County nursing home on the ground of nonpayment and the Department's approval of the involuntary transfer or discharge, the decision of the Sangamon County circuit court, where plaintiff filed her complaint for administrative review and saw the Department's decision upheld, was vacated, and the cause was remanded with directions to transfer the case to the Cook County circuit court, the proper venue. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 12-MR-743; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |

Counsel on Appeal

Duane D. Young, of LaBarre, Young & Behnke, of Springfield, for appellant.

Mark J. Silberman and Amy E. McCracken, both of Duane Morris LLP, of Chicago, for appellee Holy Family Villa.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for other appellees.

Panel

JUSTICE APPLETON delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Holder White concurred in the judgment and opinion.

## OPINION

¶ 1    The defendant in this appeal is Holy Family Villa, a nursing home in Palos Park. The plaintiff is Mary Slepicka, a resident of the nursing home.

¶ 2    Defendant served upon plaintiff a notice of involuntary transfer or discharge on the ground of nonpayment. See 210 ILCS 45/3-401(d) (West 2012). Plaintiff administratively appealed to the Illinois Department of Public Health (Department), which, after an administrative hearing, approved the involuntary transfer or discharge.

¶ 3    Plaintiff then filed a complaint for administrative review in the Sangamon County circuit court. Defendant moved to dismiss the complaint, or, alternatively, to transfer the case to the Cook County circuit court, on the ground that the Sangamon County circuit court was an impermissible venue. The Sangamon County circuit court denied the motion but ultimately upheld the Department's decision. Plaintiff appeals. (The Attorney General filed an appearance on behalf of the Department, Garate, and Hasbrouck as named defendants, but has not filed a brief.)

¶ 4    Because the Sangamon County circuit court was indeed an impermissible venue under section 3-104 of the Administrative Review Law (735 ILCS 5/3-104 (West 2012)), we vacate the judgment of the Sangamon County circuit court and remand this case with directions to transfer the case to the Cook County circuit court. See 735 ILCS 5/2-106(b) (West 2012).

¶ 5                          I. BACKGROUND

¶ 6    Defendant operates a skilled nursing facility in Palos Park, in Cook County. As we said, plaintiff is a resident there.

¶ 7        On January 24, 2012, defendant served plaintiff with a notice of involuntary transfer or discharge on the ground of nonpayment. See 210 ILCS 45/3-401(d) (West 2012). Plaintiff requested the Department to hold a hearing. See 210 ILCS 45/3-410 (West 2012).

¶ 8        On February 23, 2012, an administrative law judge from the Department, Omayra R. Giachello, held a prehearing conference at the nursing home in Palos Park. On May 24, 2012, she held an administrative hearing, also at the nursing home.

¶ 9        On August 16, 2012, Giachello issued a decision recommending approval of the involuntary transfer or discharge.

¶ 10       On August 29, 2012, in a final administrative decision, the assistant director of the Department, Teresa Garate, concurred with Giachello's recommendation.

¶ 11       On September 14, 2012, in the Sangamon County circuit court, plaintiff filed a complaint for administrative review.

¶ 12       Defendant moved to dismiss the complaint, or alternatively to transfer the case, on the ground that the Cook County circuit court was the only permissible venue. The Sangamon County circuit court denied defendant's motion but upheld the Department's approval of the involuntary transfer or discharge.

¶ 13       This appeal followed.

¶ 14       Defendant filed with us a motion to dismiss the appeal as moot on the ground that plaintiff had paid the amount that defendant had claimed was overdue. In response, plaintiff argued that the appeal actually was not moot, because she had paid under compulsion. The letter accompanying her payment had expressed to defendant that her payment was under protest. JoAnn Kaminski attached the letter to her affidavit. The letter is dated January 7, 2013, which was about five weeks after the circuit court's final order, and the first paragraph of the letter reads as follows:

> "I am paying from Mary's [*sic*] Slepika's [*sic*] remaining funds in her checking account $1800, and in additional [*sic*] personally paying, on Mary Slepicka's behalf $7950.56. These are the sums demanded by Holy Family Villa, in order to avoid the serious and disruptive actions taken and being taken against her by the facility. Please apply the enclosed check to her account and stop disturbing her equanimity and rest. I reserve, on her behalf, and my own behalf any and all rights to recover these said monies and any and all attendant damages on account of the actions of the facility. These sums are being paid without any intention to acknowledge the validity of the sums demanded or the charges made to her."

¶ 15       On January 22, 2013, we denied defendant's motion to dismiss this appeal as moot.

¶ 16                                   II. ANALYSIS

¶ 17       Defendant contends that under section 3-104 of the Administrative Review Law (735 ILCS 5/3-104 (West 2012)), the Sangamon County circuit court was an impermissible venue for this administrative review action and that because plaintiff, in her choice of venue, did not "strictly pursue[ ]" "the mode of procedure prescribed by statute," the circuit court lacked subject-matter jurisdiction and, consequently, we lack subject-matter jurisdiction. *Fredman*

*Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 210 (1985). See also 735 ILCS 5/3-102 (West 2012) ("Unless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision."); *People v. Grau*, 263 Ill. App. 3d 874, 877 (1994).

¶ 18    In response, plaintiff makes two arguments. First, she argues that defendant errs by equating venue with subject-matter jurisdiction and, further, because defendant did not cross-appeal from the circuit court's denial of its motion for dismissal on the ground of an incorrect venue, defendant is barred from raising the issue of venue now, on appeal. Second, plaintiff argues that under section 3-104 of the Administrative Review Law (735 ILCS 5/3-104 (West 2012)), the Sangamon County circuit court actually was a permissible venue. We will consider plaintiff's arguments in turn.

¶ 19                    A. Equating Venue With Subject-Matter Jurisdiction

¶ 20    Circuit courts receive their subject-matter jurisdiction from the Illinois Constitution (*People ex rel. Madigan v. Burge*, 2012 IL App (1st) 112842, ¶ 17) except that circuit courts " 'have such power to review administrative action as provided by [statutory] law' " (*id.* ¶ 18 (quoting Ill. Const. 1970, art. VI, § 9)).

¶ 21    The Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2012)) "shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of [the Administrative Review Law]." 735 ILCS 5/3-102 (West 2012). Thus, to determine whether circuit courts receive their subject-matter jurisdiction from the Administrative Review Law when reviewing decisions by the Department to approve or disapprove an involuntary transfer or discharge (see 210 ILCS 45/3-411, 3-412 (West 2012)), we ask whether the statute creating the Department or conferring power on it expressly adopts the Administrative Review Law (see 735 ILCS 5/3-102 (West 2012)).

¶ 22    Sections 3-411 and 3-412 of the Nursing Home Care Act (210 ILCS 45/3-411, 3-412 (West 2012)) empower the Department to approve or disapprove an involuntary transfer or discharge (if, within 10 days after receiving the notice of involuntary transfer or discharge, the resident requests the Department to hold a hearing (210 ILCS 45/3-410 (West 2012)). Also, section 3-320 of the Nursing Home Care Act (210 ILCS 45/3-320 (West 2012)) provides that "[a]ll final administrative decisions of the Department under this Act are subject to judicial review under the Administrative Review Law [(735 ILCS 5/3-101 to 3-113 (West 2012))]." Because section 3-320 of the Nursing Home Care Act expressly adopts the Administrative Review Law, a circuit court must receive its subject-matter jurisdiction from the Administrative Review Law to review the Department's decision to approve or disapprove an involuntary transfer or discharge. See Ill. Const. 1970, art. VI, § 9.

¶ 23    The Administrative Review Law confers subject-matter jurisdiction on the circuit court only if the plaintiff follows the procedures in that statute for seeking judicial review. Section 3-102 of the Administrative Review Law (735 ILCS 5/3-102 (West 2012)) provides: "Unless review is sought of an administrative decision within the time and in the manner herein

provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." The supreme court has interpreted this passage as withholding subject-matter jurisdiction from a circuit court unless "the statutorily prescribed procedures are *** strictly followed." *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 350 (2006). See also *Fredman*, 109 Ill. 2d at 210-11.

¶ 24 One of the "statutorily prescribed procedures" (*Rodriguez,* 218 Ill. 2d at 350), or part of the prescribed "manner" of seeking judicial review (735 ILCS 5/3-102 (West 2012)), is filing the complaint in a permissible venue. Section 3-104 of the Administrative Review Law (735 ILCS 5/3-104 (West 2012)) provides as follows:

"§ 3-104. Jurisdiction and venue. Jurisdiction to review final administrative decisions is vested in the Circuit Courts, except as to a final order of the Illinois Educational Labor Relations Board in which case jurisdiction to review a final order is vested in the Appellate Court of a judicial district in which the Board maintains an office. If the venue of the action to review a final administrative decision is expressly prescribed in the particular statute under authority of which the decision was made, such venue shall control, but if the venue is not so prescribed, an action to review a final administrative decision may be commenced in the Circuit Court of any county in which (1) any part of the hearing or proceeding culminating in the decision of the administrative agency was held, or (2) any part of the subject matter involved is situated, or (3) any part of the transaction which gave rise to the proceedings before the agency occurred. The court first acquiring jurisdiction of any action to review a final administrative decision shall have and retain jurisdiction of the action until final disposition of the action."

¶ 25 The authorities we have discussed so far lend plausibility to defendant's argument that, in cases to which the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2012)) applies, subject-matter jurisdiction depends on filing the complaint in a permissible venue. As the parties agree, the Administrative Review Law applies to this case. Section 3-102 of the Administrative Review Law (735 ILCS 5/3-102 (West 2012)) says: "Unless review is sought of an administrative decision within the time and in the manner herein provided, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of such administrative decision." Arguably, filing the complaint in a permissible venue, as described by section 3-104, quoted above, is part of the prescribed "manner" of seeking judicial review, and unless the plaintiff files the complaint in a permissible venue within the prescribed "time" (within 35 days after service of the final administrative decision (735 ILCS 5/3-103 (West 2012)), judicial review is "barred." 735 ILCS 5/3-102 (West 2012).

¶ 26 The trouble with such reasoning is that it conflicts with section 2-104(a) and 2-106(b) of the Code of Civil Procedure (735 ILCS 5/2-104(a), 2-106(b) (West 2012)). Section 2-104(a) says: "No action shall abate or be dismissed because commenced in the wrong venue if there is a proper venue to which the cause may be transferred." 735 ILCS 5/2-104(a) (West 2012). Also, section 2-106(b) says that after an action is transferred from the wrong venue to the correct venue, "the action shall proceed and be determined as if it had originated in that court." 735 ILCS 5/2-106(b) (West 2012). These two sections are part of article II of the Code of Civil Procedure, which, according to section 1-108(a) (735 ILCS 5/1-108(a) (West

2012)), applies to proceedings under article III, the Administrative Review Law, except as article III otherwise provides. Because the Administrative Review Law does not *specifically* say that judicial review is barred unless the complaint is filed, within the time prescribed, in a permissible venue, whereas, on the other hand, sections 2-104(a) and 2-106(b) specifically say that filing in the wrong venue counts for purposes of filing within the time prescribed, we agree with plaintiff that filing in the wrong venue is not fatal to subject-matter jurisdiction. See *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195 (1992) (a specific statute prevails over a general statute); *Kane County Defenders, Inc. v. Pollution Control Board*, 139 Ill. App. 3d 588, 590 (1985) ("It is well-established *** that if a cause of action is timely filed in the wrong venue and then [is] transferred to the proper venue after the statutory filing period has expired, it remains timely filed.").

¶ 27                    B. The Question of Whether Sangamon County Was a
                              Permissible Venue Under Section 3-104

¶ 28       Again, section 3-104 provides in relevant part: "If the venue of the action to review a final administrative decision is expressly prescribed in the particular statute under authority of which the decision was made, such venue shall control, but if the venue is not so prescribed, an action to review a final administrative decision may be commenced in the Circuit Court of any county in which (1) any part of the hearing or proceeding culminating in the decision of the administrative agency was held, or (2) any part of the subject matter involved is situated, or (3) any part of the transaction which gave rise to the proceedings before the agency occurred." 735 ILCS 5/3-104 (West 2012). The Nursing Home Care Act does not specify the venue for judicially reviewing the Department's decision to approve or disapprove an involuntary transfer or discharge. Therefore, the permissible venue is any county in which (1), (2), or (3) holds true. See *id.*

¶ 29       Plaintiff invokes (1): "any county in which *** any part of the hearing or proceeding culminating in the decision of the administrative agency was held." *Id.* She reasons:

         "The facility acknowledges that the Department of Public Health has offices in Springfield [(in Sangamon County)]. [Citation to record.] It is clear that the decision, made by the Assistant Director on delegation of the Director, emanated from Springfield. [Citation to record.] There is no evidence that the decision was made or effected anywhere else as the facility would have the court speculate."

¶ 30       Item (1) does not say, however, that a permissible venue is the county in which the final administrative decision was made. Rather, item (1) says that a permissible venue is "any county in which *** any part of the hearing or proceeding *culminating* in the decision of the administrative agency was held." (Emphasis added.) *Id.* In other words, in order for Sangamon County to be a permissible venue under (1), the department would have had to "h[o]ld" at least "part of the hearing or proceeding" in Sangamon County before issuing a final administrative decision premised on that hearing or proceeding. We are unaware that the Department did so. To "hold" a hearing or proceeding means to "convoke" and "preside [over]" a hearing or proceeding. Black's Law Dictionary 736 (7th ed. 1999). The assistant director of the Department does not hold a hearing or proceeding in Springfield by retiring

to her office there and writing a decision.

¶ 31    In sum, the only permissible venue under section 3-104 appears to be Cook County, in which Palos Park is located. That is where the nursing home is, that is where defendant issued the notice of involuntary transfer or discharge, and that is where the Department held the administrative hearing.

¶ 32         C. The Question of Whether Defendant Had To Cross-Appeal in Order
            To Argue to Us That Sangamon County Was an Impermissible Venue

¶ 33    Plaintiff maintains that since "*[n]o cross-appeal was filed*," the issue of venue "is not before the court on this appeal." (Emphasis in original.) Plaintiff is mistaken. Defendant had to file a cross-appeal only if the judgment was at least partly adverse to defendant. See *Landmarks Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164, 174 (1988); *Fillpot v. Midway Airlines, Inc.*, 261 Ill. App. 3d 237, 240 (1994). The circuit court's judgment was entirely favorable to defendant. Therefore, defendant did not have to cross-appeal as a condition of challenging venue. See *id.*

¶ 34         D. Defendant's Contention That Payment Has Made This Appeal Moot

¶ 35    Defendant contends that this case is moot, considering that "Slepicka has now paid the amount owed" and that, under section 3-401(d) of the Nursing Home Care Act (210 ILCS 45/3-401(d) (West 2012)), she now "cannot be involuntarily discharged or transferred." Section 3-401(d) provides:

"The notice [of involuntary discharge] shall state *** that the responsible party has the right to pay the amount of the bill in full up to the date the transfer or discharge is to be made and then the resident shall have the right to remain in the facility. *Such payment shall terminate the transfer or discharge proceedings*." (Emphasis added.) *Id.*

Defendant reasons: "Now that Holy Family Villa has been paid, there is no threat of involuntary discharge, and this appeal is moot."

¶ 36    "An issue is moot if the parties' interests and rights are no longer in controversy and the resolution of the issue will have no practical effect." *Sadler v. Creekmur*, 354 Ill. App. 3d 1029, 1039-40 (2004). This appeal is not moot, because a judicial reversal of the Department's decision could have the "practical effect" of entitling plaintiff to restitution of an overpayment.

¶ 37    Plaintiff appears to have a good argument that she paid the $9,750.56 under compulsion: she had to pay, or else defendant would have "involuntarily discharged" her from the nursing home. See *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 802 (2007). As plaintiff made clear to defendant in her letter, her payment was under protest. She paid with the intention of obtaining, first, a reversal of the circuit court's judgment in the administrative-review action and, subsequently, restitution from defendant on the basis of that reversal.

¶ 38    If plaintiff paid voluntarily, the voluntary-payment doctrine would bar her from trying to get her money back (see *Ramirez*, 371 Ill. App. 3d at 801), and, as defendant argues, the payment would render this appeal moot. But she paid under protest, and the supreme court

has stated that "protest is the best evidence of an unwillingness to pay"; a protest "precludes a finding of voluntariness, which is a prerequisite to the application of [the voluntary-payment] doctrine." *Isenstein v. Rosewell*, 106 Ill. 2d 301, 309 (1985). If the payment of the $9,750.56 was under compulsion and if a court ultimately determined, contrary to the Department's decision, that defendant was not entitled to this payment, plaintiff would have a reasonable argument that defendant owed her restitution in the amount of $9,750.56. See *Dreyfus v. Ameritech Mobile Communications, Inc.*, 298 Ill. App. 3d 933, 938 (1998); *Community Convalescent Center of Naperville, Inc. v. First Interstate Mortgage Co. of Illinois*, 181 Ill. App. 3d 996, 1000 (1989); Restatement (Third) of Restitution and Unjust Enrichment § 35 (2011). Generally, it is a question of fact whether a payment was made under compulsion (*Ramirez*, 371 Ill. App. 3d at 802), but it appears that, under the circumstances, plaintiff could make a compelling case that, after the unfavorable decisions by the Department and the circuit court, she had no "reasonable alternative" but to pay what defendant demanded (*id.*).

¶ 39    Granted, restitution is not a remedy the circuit court could grant in this administrative-review action (although an action for restitution could be joined to the administrative-review action (see *Stykel v. City of Freeport*, 318 Ill. App. 3d 839, 844 (2001))). It does not follow, however, that the correctness of the Department's decision is an "abstract question" (*Mount Carmel High School v. Illinois High School Ass'n*, 279 Ill. App. 3d 122, 124 (1996)) that the parties lack any practical incentive to litigate (see *In re L.W.*, 291 Ill. App. 3d 619, 625 (1997) (Cook, J., dissenting)). As plaintiff makes clear in her reply brief, if the Department's decision is reversed, she will use that reversal as a basis for pursuing restitution of the $9,750.56. Therefore, we conclude this appeal is not moot. The question in this appeal is not "academic." *City of Chicago v. Leviton*, 137 Ill. App. 3d 126, 129 (1985).

¶ 40    If we accepted defendant's reasoning that this appeal is moot, we effectively would hold that actually being "involuntarily discharged" from a nursing home is a condition to obtaining judicial review of the Department's decision to approve a notice of involuntary discharge. By paying the amount demanded, to avoid being evicted from the nursing home, the resident effectively would relinquish his or her right to judicial review.

¶ 41                                    III. CONCLUSION

¶ 42    For the foregoing reasons, we vacate the judgment of the Sangamon County circuit court and remand this case with directions to transfer this case to the Cook County circuit court.

¶ 43    Vacated and remanded with directions.