# Illinois Official Reports

## Supreme Court

*In re Marriage of Donald B.*, 2014 IL 115463

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARRIAGE OF DONALD B., Petitioner-Appellee, and ROBERTA B., Respondent (Lisa Madigan, Attorney General of the State of Illinois, Intervenor-Appellant). |
| Docket No. | 115463, 115553 cons. |
| Filed | May 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a noncustodial parent who had a sex offense conviction was statutorily barred from court-ordered visitation until successful completion of a court-ordered treatment program, a constitutional challenge to that statute was moot after an evaluation for sex-offender treatment yielded a recommendation that no further treatment was necessary—no mootness exception applicable. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, the Hon. Mark J. Lopez, Judge, presiding. |
| Judgment | Appeal dismissed.<br>Circuit court judgment vacated.<br>Stay vacated and cause remanded. |

| Counsel on Appeal | Robert F. Harris, Cook County Public Guardian, of Chicago (Kass A. Plain and Mary Brigid Hayes, of counsel), appellant. |

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of Chicago, of counsel), intervenor-appellant.

Zachary M. Bravos and Kathleen M. DiCola, of Bravos & DiCola, of Wheaton, for appellee.

Justices      JUSTICE BURKE delivered the judgment of the court, with opinion. Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1      This matter comes before us on direct appeal from a circuit court of Cook County judgment finding section 607(e) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/607(e) (West (2010)) unconstitutional on its face and as applied to petitioner, Donald B. Section 607(e) prohibits a non-custodial parent who has been convicted of a sexual offense perpetrated on a victim less than 18 years of age from obtaining court-ordered visitation with his or her children while serving his sentence and until successfully completing "a treatment program approved by the court."

¶ 2      In this case, after Donald's visitation with his minor children was suspended pursuant to section 607(e), he challenged the constitutionality of the statute. The circuit court of Cook County ruled the statute unconstitutional and then ordered visitation be reinstated. That order was stayed, however, by this court at the request of the Cook County Public Guardian (Public Guardian), who brought this appeal from the circuit court's finding of unconstitutionality on behalf of Donald's two minor children, Andrea B. and Jonathan B.[1] Lisa Madigan, Attorney General of the State of Illinois, has also filed an appeal from the circuit court's ruling as intervenor. We have consolidated the two appeals for our review.

---

[1]We will refer to Donald and Roberta's youngest child as "Jonathan" although, in the record, the name is sometimes spelled "Johnathan."

¶ 3    After the parties submitted their briefs and oral argument was heard, Donald filed a motion in the circuit court seeking reinstatement of visitation, asserting that he was now in compliance with section 607(e) of the Marriage Act. This raised a question as to whether the appeal before us had been rendered moot. We requested additional briefing.

¶ 4    We now hold that the appeal before us is moot and no exceptions to the mootness doctrine apply to permit our consideration of the statute's constitutionality. Accordingly, we lift the stay order entered by this court, vacate the circuit court's order finding the statute unconstitutional, and remand to the circuit court for further proceedings consistent with this opinion.

BACKGROUND

¶ 6    Donald (Petitioner) and Roberta (Respondent) were married in 1995. Together they have four children: Erin, born November 15, 1991 (now emancipated); Derek, born June 4, 1994 (now emancipated); Andrea, born March 24, 1998, and Jonathan, born October 2, 1999. In 2002, Donald filed a petition for dissolution of marriage, in which he alleged that Roberta had abandoned him and the children in November 2001. Donald sought sole custody of the children and child support from Roberta.

¶ 7    After several continuances, a final judgment for dissolution of marriage was entered in October 2004, in accord with a marital settlement agreement and joint parenting agreement. The joint parenting agreement provided that Donald and Roberta would share custody of the children, but that the children's primary residence would be with Donald "for school purposes only."

¶ 8    In July 2008, Donald and Roberta's oldest child, Erin, who was then 16 years old, attempted suicide. Roberta petitioned the court to have Erin's primary residential custody changed so that Erin could live with Roberta. The matter was referred for mediation and the Public Guardian was appointed to represent Erin, but no change was made to Erin's residential custody at that time. However, on or about March 3, 2009, a child abuse report was made to the Department of Children and Family Services (DCFS) hot line, alleging that Donald had sexually abused Emily H., a non-related minor who had lived in Donald's neighborhood. Because of this report, DCFS put into place a "safety plan" for Donald's children while the report was being investigated. Larisa Rico, a child protective investigator for DCFS, testified at a later hearing that the initial safety plan she devised permitted Donald's children to remain in his physical custody upon his agreement that all of his contact with the children would be supervised. Rico testified that she devised this plan because Donald led her to believe that the children's mother, Roberta, was unavailable and "ill-suited" to care for the children. Subsequently, however, DCFS learned that Roberta had joint custody of the children and was a suitable caregiver. Accordingly, on April 8, 2009, DCFS changed the safety plan to require that the children reside with their mother and that Donald have supervised visitation.

¶ 9    On or about April 9, 2009, Donald was arrested and charged in a 17-count indictment with the predatory criminal sexual assault, aggravated criminal sexual abuse, and criminal sexual abuse of Emily H. The indictment alleged that, between January 1, 2004, and July 27, 2008, from the time that Emily H. was 10 years old until she was 14 years old, Donald had engaged in

sexual intercourse and other sexual acts with Emily. The next day, April 10, 2009, Roberta filed an emergency petition asking the court to order the transfer of physical custody and possession of the children from Donald to her, in accord with the safety plan which had been developed by DCFS on April 8, 2009. The court granted the petition. Pursuant to the order, Donald and Roberta would still share legal custody of the children, but Roberta would have temporary physical possession of them. The court also ordered that Donald be permitted supervised visitation with the children, as provided in the April 8, 2009, DCFS safety plan.

¶ 10    A short time later, Roberta filed a second petition with the court. In this petition, she asked the court to appoint a new visitation supervisor. Roberta advised the court that the current person supervising Donald's visitation with his children was Donald's live-in girlfriend, Jessica, who had two young children of her own. An evidentiary hearing was held on the petition on December 14, 2009. At this hearing, the court heard testimony from Donald, Jessica, and DCFS investigator Larisa Rico. Rico testified that she conducted the investigation of the child abuse report against Donald, that the investigation was now completed, and the report was "indicated" based on a DCFS determination that Donald posed a substantial risk of harm to his children due to "overwhelming evidence" of his sexual abuse of the non-related child, Emily H. Rico also testified that when she was investigating the report, Donald described Jessica as a "friend," not as a "girlfriend." Rico said she had been unaware that Donald and Jessica had begun living together and noted that, having learned that day in court of this new living arrangement, a new "hot line" report would be made to address the possible risk of harm to Jessica's children.

¶ 11    After hearing all of the evidence, the court granted Roberta's petition to change the visitation supervisor. Subsequently, the court entered an agreed order in which new visitation supervisors were named and a new visitation schedule was set. It appears from the record that Donald continued to exercise his right to supervised visitation with his children throughout the time that his criminal case was pending.

¶ 12    On September 12, 2011, Donald entered a guilty plea in the criminal division of the circuit court of Cook County to one count of criminal sexual abuse, a Class 4 felony. He was sentenced to two years' probation. At sentencing, the court informed Donald that he would be required to register as a sex offender and that he would have to provide a DNA sample and be tested for sexually transmitted diseases. However, the criminal court did not specify in its sentencing order that Donald was required to obtain sex offender treatment, as set forth in section 5-6-3(a)(8.5) of the Unified Code of Corrections. See 730 ILCS 5/5-6-3(a)(8.5) (West 2010).[2]

---

[2]Section 5-6-3(a)(8.5) provides: "The conditions of probation and of conditional discharge shall be that the person: *** if convicted of a felony sex offense as defined in the Sex Offender Management Board Act, the person shall undergo and successfully complete sex offender treatment by a treatment provider approved by the Board and conducted in conformance with the standards developed under the Sex Offender Management Board Act."

¶ 13 On December 29, 2011, after Donald was convicted and sentenced, Roberta petitioned the court to modify the custody order previously entered, based on a change in circumstances. She requested that she be given sole legal custody of the children and other relief. The court granted the petition and, on March 21, 2012, entered an order granting Roberta sole custody of Derek, Andrea and Jonathan.[3] In addition, the court suspended Donald's visitation with his children pursuant to section 607(e) of the Marriage Act. That provision states:

> "(e) No parent, not granted custody of the child, *** convicted of any offense involving an illegal sex act perpetrated upon a victim less than 18 years of age including but not limited to offenses for violations of Section 11-1.20, 11-1.30, 11-1.40, 11-1.50, 11-1.60, 11-1.70, or Article 12 of the Criminal Code of 1961 or the Criminal Code of 2012, is entitled to visitation rights while incarcerated or while on parole, probation, conditional discharge, periodic imprisonment, or mandatory supervised release for that offense, and upon discharge from incarceration for a misdemeanor offense or upon discharge from parole, probation, conditional discharge, periodic imprisonment, or mandatory supervised release for a felony offense, visitation shall be denied until the person successfully completes a treatment program approved by the court." 750 ILCS 5/607(e) (West 2012).

¶ 14 Donald moved to vacate the March 21, 2012, order suspending his visitation, arguing that section 607(e) of the Marriage Act is unconstitutional on its face and as applied to him. Notice of the claim was sent to the Attorney General pursuant to Illinois Supreme Court Rule 19 (eff. Sept. 1, 2006) and on May 4, 2012, the Attorney General was granted leave by the circuit court to intervene in the matter. Thereafter, all of the parties submitted briefs to the court addressing the constitutionality of the statute and a hearing was held on August 28, 2012. Donald argued that a parent's right to visitation with his child is a fundamental right, which the State may not abridge unless there is a compelling State interest and the court finds that denying visitation is in the child's best interest.

¶ 15 On December 12, 2012, the circuit court issued its decision. At the outset, the court held that, because a parent has a fundamental right to have companionship, care, and contact with his or her own child, the court must apply "strict scrutiny" when deciding whether a due process violation has occurred. The court then held: (1) although the State has a compelling interest in protecting children and preventing their sexual exploitation and abuse, section 607(e)'s restriction on a parent's fundamental right is overly broad and not narrowly tailored to achieve legitimate state interests and, thus, section 607(e) violates substantive due process; (2) a parent's fundamental right to the companionship, care and contact with his or her child is a liberty interest which is completely (although temporarily) abridged by section 607(e), without notice or opportunity to be heard, constituting a procedural due process violation; and (3) section 607(e) violates the separation of powers provision in the Illinois Constitution (Ill. Const. 1970, art. II, § 1) because it serves as an injunction, imposed by the legislature, prohibiting the judiciary from fulfilling its duty to determine whether contact between a parent

---

[3]At this time, Donald and Roberta's oldest child, Erin, was more than 18 years of age and no longer subject to the custody order.

and the parent's child is in the child's best interest. The circuit court then vacated its order of March 21, 2012, suspending Donald's supervised visitation with his children and reinstated visitation *instanter*.

¶ 16   The Public Guardian filed a motion in the circuit court seeking a stay of the December 12, 2012, order reinstating visitation. A hearing on the motion was held January 9, 2013. Although the circuit court denied the Public Guardian's motion for a stay, the court entered an agreed order requiring Donald to attend "a court-approved [sex offender] treatment program." It was also agreed that an appropriate treatment program provider would be selected from a list provided by the Illinois Sex Offender Management Board (the Board). In a subsequent order dated January 10, 2013, the circuit court noted that a treatment provider from the Board's approved list had been contacted and had requested that Donald be evaluated prior to treatment. Accordingly, the court entered an order requiring Donald to participate in the evaluation so that "Petitioner can participate in a court-approved treatment program for criminal sexual offenders."

¶ 17   Also on January 10, 2013, the circuit court issued its written opinion, setting forth the specific grounds for its finding that section 607(e) is unconstitutional, as required by Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006). Thereafter, on January 11, 2013, the Office of the Public Guardian, on behalf of Andrea B. and Jonathan B., filed an appeal directly with this court pursuant to Illinois Supreme Court Rule 302 (eff. Sept. 1, 2006). The Attorney General also filed an appeal in this court on January 15, 2013. The two appeals have been consolidated.

¶ 18   The Public Guardian also filed an emergency motion asking this court to stay the circuit court order reinstating Donald's visitation with his children pending disposition of the appeal. We granted that motion on January 22, 2013.

¶ 19   Donald's sentence of probation ended on August 30, 2013, and on September 25, 2013, he filed a motion in the circuit court seeking to reinstate visitation. In the motion, Donald asserted that his sentence of probation had been successfully completed and that he had been evaluated for sex offender treatment by a provider approved by the Board, pursuant to the Sex Offender Management Board Act (see 20 ILCS 4026/1 *et seq*. (West 2012)), and no treatment was recommended.[4] Accordingly, he asserted that he was now in compliance with section 607(e) and, therefore, visitation should be reinstated.

¶ 20   Because the circuit court's earlier order reinstating visitation had been stayed by order of this court, the circuit court refused to consider Donald's motion. Donald then filed a motion in this court on November 25, 2013, asking us to lift the stay so the circuit court could consider his motion to reinstate visitation. In an order dated December 11, 2013, this court held that the motion to modify the stay would be taken with the case. In addition, we asked the parties to submit supplemental briefs on whether the case had been rendered moot due to Donald's alleged compliance with section 607(e) and, if so, whether any exception to the mootness doctrine would permit our consideration of section 607(e)'s constitutionality.

---

[4]In his motion, Donald provided a portion of a letter from his sex offender evaluator in which the evaluator stated "[t]here was no recommendation for sex offender counseling in his case."

ANALYSIS

I. Mootness

The threshold question this court must resolve is whether the appeal before us has been rendered moot by events which occurred subsequent to its filing. We have consistently held that "[a]n appeal is moot when it involves no actual controversy or the reviewing court cannot grant the complaining party effectual relief." *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 522-23 (2001). Under those circumstances, we will not review cases "merely to establish a precedent or guide future litigation." *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 235 (1982). Even if a case is pending on appeal when the events that render an issue moot occur, we generally will not issue an advisory opinion. *Bluthardt v. Breslin*, 74 Ill. 2d 246, 250 (1979).

In the case at bar, Donald's visitation rights with his children were denied pursuant to section 607(e) of the Marriage Act, which mandates that a non-custodial parent who is a convicted child sex offender is not entitled to visitation rights until he successfully completes his criminal sentence and "a treatment program approved by the court." Donald challenged the suspension of his visitation rights on the grounds that section 607(e) is unconstitutional. The circuit court agreed and ruled the statute unconstitutional. In the consolidated appeal before us, the Public Guardian and the Attorney General seek to overturn the circuit court's findings of unconstitutionality. However, subsequent to the filing of these appeals, Donald completed his sentence of probation and then filed a motion in the circuit court seeking reinstatement of his visitation rights, asserting that he had successfully completed the requirements of section 607(e) and, therefore, that provision is no longer a bar to his ability to obtain visitation.

As noted above, the circuit court did not rule on Donald's motion because of the stay issued by this court. Nevertheless, Donald's asserted compliance with section 607(e) raised a question about whether the appeal before us was now moot. The parties were asked to submit supplemental briefs on this point. In their briefs, the parties concede that the appeal before us would be moot if Donald was in compliance with the requirements of section 607(e), as he asserted in his motion in the circuit court. This is because Donald's compliance with section 607(e) would mean that provision could no longer serve as the basis for denying Donald his visitation rights and, thus, a finding that section 607(e) is unconstitutional is not necessary for Donald to obtain relief. However, the parties do not agree on whether Donald has "successfully complete[d] a treatment program approved by the court" as required by section 607(e).

Donald contends that when construing section 607(e), the term "treatment program" within the statute must be interpreted in the context of the comprehensive scheme created by the legislature through the Sex Offender Management Board Act and the Sex Offender Evaluation and Treatment Provider Act. See 20 ILCS 4026/1 *et seq.* (West 2012); 225 ILCS 109/1 *et seq.* (West 2012). These Acts were created by the legislature to manage and standardize the qualifications of providers, and the evaluation and treatment of sex offenders. Donald argues that, according to the scheme set forth in these Acts, sex offenders must first be evaluated by a licensed evaluator and then must undergo treatment based on the recommendations of the treatment provider's individualized evaluation and assessment. See 20 ILCS 4026/17(b) (West 2012). In this case, Donald was evaluated by an authorized sex offender treatment provider in accord with the guidelines promulgated by the Board and the provider concluded that no

additional treatment was indicated.[5] Accordingly, Donald maintains that he has successfully completed the court-ordered treatment program and, as a result, is in compliance with the requirements of section 607(e).

¶ 27     The Public Guardian contends that the statute requires Donald to complete a treatment program regardless of any recommendation or determination made by the approved sex offender treatment provider. Thus, because Donald has never obtained any actual treatment, the Public Guardian maintains that Donald is not in compliance and the appeal before us is not moot.

¶ 28     The Attorney General, however, contends that the appeal is not moot until the circuit court determines that Donald has successfully completed "a treatment program approved by the court" as required by section 607(e). The Attorney General argues that this court should lift the stay and remand the matter to the circuit court for a determination on this point. According to the Attorney General, if the circuit court finds on remand that Donald is in compliance with the statute and grants Donald's motion to reinstate visitation, the constitutionality of section 607(e) would then be moot, the appeal before us should be dismissed, and the circuit court's finding that section 607(e) is unconstitutional should be vacated.

¶ 29     We see no reason to remand to the circuit court for a determination as to Donald's compliance with section 607(e). The facts of record, as supplemented, are not in dispute. Thus, the question of Donald's compliance with the requirements of section 607(e) is simply a matter of statutory interpretation—a question of law, which we may resolve now.

¶ 30     The record, as supplemented, establishes that Donald successfully completed his sentence of probation on August 30, 2013. The record further establishes that, in accord with the circuit court's order that Donald be evaluated so that he could receive "court-approved treatment," Donald was seen by Leo J. Meagher, a Licensed Clinical Professional Counselor and Certified Criminal Justice Specialist, who conducted a psychological/sex offender evaluation. Based on his evaluation, Meagher unequivocally concluded: "As a result of the testing, history, and extensive follow-up, I do not have any recommendation for sex offender counseling in this case." In addition, Meagher reported, "As to his risk for being around children, I did not have any reservations about him being around children as a result of this evaluation and I did not feel that there was any elevated risk in his case. *** I don't feel that [Donald] is a danger to anyone and there is no indication of any psychological disorder in his evaluation and follow up." In light of the above, we agree with Donald that his cooperative participation in the sex offender evaluation, coupled with the evaluator's assessment and recommendation that no

_____

[5]Because the record did not contain a copy of the evaluation, we issued an order on March 4, 2014, directing Donald to "supplement the record on appeal with a copy of the petition to reinstate visitation filed in the circuit court September 25, 2013," and "also supplement the record with the report of the sex offender treatment provider and letter referred to in the same documents, as well as any documentation showing that his probation has been completed."

Donald complied with our order and submitted the requested documents, along with affidavits signed by counsel of record for each of the parties, pursuant to Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006).

further treatment was necessary, is sufficient to show compliance with the requirement in section 607(e) that he "successfully complete a treatment program approved by the court." Since Donald has established that he is in compliance with the requirements of section 607(e) of the Marriage Act, the statutory restriction on visitation rights no longer applies to him. Accordingly, we conclude that the question of the statute's constitutionality is now moot.

¶ 31                                II. Exception to the Mootness Doctrine

¶ 32    Our finding that the appeal before us is moot does not end our inquiry. The question we must now answer is whether we should dismiss this appeal and vacate the circuit court's ruling that section 607(e) of the Marriage Act is unconstitutional, or consider the constitutional issue under an exception to the mootness doctrine. As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. See *Bartlow v. Costigan*, 2014 IL 115152 (an appeal is rendered moot if an event occurs that forecloses the reviewing court from granting effectual relief to the complaining party); *In re Alfred H.H.*, 233 Ill. 2d 345 (2009). However, there are exceptions to the mootness doctrine, which, if applicable, permit a reviewing court to consider a moot question. In the present case, Donald and the Public Guardian argue that, if the present appeal is held to be moot, this court should consider the constitutionality of section 607(e) under the public interest exception to the mootness doctrine. The Attorney General, however, argues to the contrary.

¶ 33    The public interest exception to the mootness doctrine allows a court to consider an otherwise moot issue when (1) the question presented is of a substantial public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question. *Felzak v. Hruby*, 226 Ill. 2d 382, 393 (2007); *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 622 (1952). The "public interest" exception is "narrowly construed and requires a clear showing of each criterion." *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 292 (2005) (citing *In re India B.*, 202 Ill. 2d 522, 543 (2002), and *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999)).

¶ 34    The Attorney General argues that the case before us does not meet the rigid standards of the public interest exception necessary for our application of this exception to the mootness doctrine. We agree. The first criterion—whether the issue is one of substantial public interest—is not evident here. As the Attorney General points out, section 607(e) does not "broadly determine the rights of parents or their children." The statutory provision affects a very limited group, *i.e.*, non-custodial parents who have been convicted of a sexual offense involving a minor child. Moreover, the provision only limits a non-custodial parent's ability to seek court-ordered visitation. Nothing in the provision prohibits the custodial parent from consenting to such visitation.

¶ 35    Donald argues that the public interest exception should be applied because (1) if we decline to address the constitutionality issue, the circuit court's ruling would stand and, thus, the validity of the statute would be unsettled, disturbing the stability of the legal system; and (2) in some cases, section 607(e) could operate as a complete termination of a parent's rights. We are not persuaded by either argument. First, as already noted above, if the public interest exception

is not applied to address the constitutionality of section 607(e), the circuit court's judgment would be vacated. This eliminates any concern about the unsettled nature of the law. Second, section 607(e) could never operate to terminate *all* parental rights since the statutory provision only affects *visitation* rights. Further, while it may be true that there are some instances where section 607(e) could operate to permanently terminate a non-custodial parent's right to visitation with his or her minor children, that situation is not presented here. See *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999) (a court should not resolve a moot question merely for the sake of setting a precedent to govern potential future cases). If, in the future, such a situation should arise, the affected parent could certainly challenge the constitutionality of the statute at that time.

¶ 36       As to the remaining public interest criteria, once again we agree with the Attorney General. There is little evidence that an authoritative ruling is necessary for the future guidance of public officials. There is no conflict of authority regarding the constitutionality of section 607(e) because, as the Public Guardian notes, although section 607(e) was added to the Marriage Act more than twenty years ago, there are no reported decisions, other than the one before us, which have addressed the application of this provision. We conclude, therefore, that the need for an advisory opinion regarding the proper interpretation and enforcement of section 607(e) is questionable at best. Accordingly, we decline to apply the public interest exception to the mootness doctrine here to reach the question of section 607(e)'s constitutionality.

¶ 37                                         CONCLUSION

¶ 38       In sum, we find the appeal before us is moot and that the public interest exception to the mootness doctrine is not applicable here. Therefore, we dismiss the appeal before us and vacate the circuit court's ruling that section 607(e) is unconstitutional.

¶ 39       In addition, we vacate our January 22, 2013, stay order and remand to the circuit court for further proceedings consistent with this opinion.

¶ 40       Appeal dismissed.

¶ 41       Circuit court judgment vacated.

¶ 42       Stay vacated and cause remanded.