# Illinois Official Reports

## Appellate Court

*Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*,
2015 IL App (3d) 140899

| | |
|---|---|
| Appellate Court Caption | LAKEWOOD NURSING AND REHABILITATION CENTER, LLC, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC HEALTH; DIRECTOR OF PUBLIC HEALTH; and HELEN SAUVAGEAU, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-14-0899 |
| Filed | November 2, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 14-MR-1184; the Hon. John Anderson, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Holly Turner, of Branson, Missouri, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Frank H. Bieszczat, Assistant Attorney General, of counsel), for appellees Director of Department of Public Health and Department of Public Health. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices Lytton and O'Brien concurred in the judgment and opinion. |

¶ 1    Plaintiff, Lakewood Nursing & Rehabilitation Center, LLC (Lakewood), appeals the trial court's dismissal of its petition for administrative review as moot pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)). Because we find that the issues raised in Lakewood's petition for administrative review fall within the public interest and capable of repetition yet evading review exceptions to the mootness doctrine, we reverse and remand for further proceedings.

¶ 2                                    FACTS

¶ 3    Lakewood filed a notice of its intent to involuntarily discharge Helen Sauvageau, a resident of its nursing home facility, on October 28, 2013, after Sauvageau failed to pay for her stay and nursing services. Sauvageau requested a hearing with the Illinois Department of Public Health (IDPH). Sauvageau then filed for Medicaid, which stayed the discharge proceedings. Sauvageau's request for Medicaid was denied due to her transfer of real estate from her name to her daughter's name. Lakewood received Sauvageau's Medicaid denial on January 15, 2014, and requested an immediate involuntary discharge hearing. IDPH scheduled the hearing for March 24, 2014.[1]

¶ 4    The evidentiary hearing was held on March 24 before administrative law judge (ALJ) Joseph Harrington. Following the evidentiary hearing, Harrington issued a report finding that Sauvageau stipulated that she owed money to Lakewood. The report recommended that the notice of involuntary discharge be approved 30 days after the receipt of the final ruling. On May 6, 2014, John Abrell, the chief ALJ for IDPH, issued a final order adopting Harrington's recommendations, affirming the notice of involuntary transfer, and dismissing the action.

¶ 5    Lakewood filed a complaint for administrative review against IDPH, Director Lamar Hasbrouck, and Sauvageau seeking judicial review of the following issues: (1) the order of IDPH setting the matter for hearing more than 10 days after it received the hearing request; (2) the failure of IDPH to issue the final order within 14 days of the hearing; and (3) the portion of the final order requiring Lakewood to keep Sauvageau at the nursing facility for 30 days after receipt of the order, which Lakewood argued was beyond the statutory time limit. Lakewood contended that the actions of IDPH were contrary to and in excess of its powers under the Nursing Home Care Act (Act) (210 ILCS 45/1-101 *et seq.* (West 2014)) and the related provisions of the Skilled Nursing and Intermediate Care Facilities Code (77 Ill. Adm. Code 300.110 (1992)). Lakewood also claimed that IDPH acted without jurisdiction. Lakewood further alleged that IDPH's actions unconstitutionally required Lakewood to provide services without compensation; interfered with the protected occupational business of Lakewood; interfered with Lakewood's contract rights; and constituted illegal rulemaking. Lakewood requested that the court: (1) reverse IDPH's final order insofar as it required Lakewood to keep Sauvageau beyond the expiration of the statutory time limit; and (2) declare unconstitutional

_____

[1]The background facts stated in this paragraph were alleged by Lakewood in its complaint for administrative review and its response to defendants' motion to dismiss.

IDPH's policies and practices of setting the hearing more than 10 days after it received the hearing request and issuing the final order more than 14 days after the evidentiary hearing.

¶ 6 On August 13, 2014, defendants IDPH and Hasbrouck (defendants) filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)). The motion argued that Lakewood's claims were moot because Sauvageau was no longer a resident at Lakewood's facility. Defendants contended that the circuit court lacked jurisdiction to hear the case on administrative review pursuant to section 3-104 of the Code (735 ILCS 5/3-104 (West 2014)) because Lakewood's complaint for administrative review did not seek review of the final order but sought only declaratory relief regarding the timeliness of IDPH's actions.

¶ 7 Lakewood filed a response to defendants' motion to dismiss. Lakewood reasserted its substantive position from its complaint that IDPH had no statutory authority to order that the notice of involuntary discharge be approved 30 days after receipt of the final order. Lakewood contended that, under the Act, IDPH only had the authority to review the propriety of the notice of involuntary discharge and IDPH exceeded its statutory authority by ordering the length of time that Lakewood was required to keep Sauvageau at its facility. Lakewood contended that section 3-413 of the Act (210 ILCS 45/3-413 (West 2014)), which provides that a resident subject to an involuntary discharge may not be required to leave the facility before the thirty-fourth day after receiving the notice of involuntary discharge or the tenth day after receipt of IDPH's decision, whichever is later, was a limitation on the facility. Lakewood argued that section 3-413 did not authorize IDPH to extend the time provided by statute at its discretion. Lakewood asserted that IDPH's extension of the time that Lakewood was required to keep Sauvageau caused Lakewood to lose money.

¶ 8 Lakewood further argued that this claim and its claims regarding the timing of the hearing and issuance of the final order were not moot and, even if the claims were moot, they fell within the following exceptions to the mootness doctrine: (1) public interest; (2) capable of repetition yet evading review; and (3) collateral consequences. Lakewood also argued that IDPH lost jurisdiction over the cause when it failed to hold the evidentiary hearing within the statutorily required 10-day window and failed to issue its ruling within 14 days of the hearing, and, consequently, the final order was void and could be collaterally attacked any time.

¶ 9 Lakewood attached to its response an e-mail purporting to be from Abrell responding to a question regarding the final portion of the order in Sauvageau's case stating that the notice of involuntary discharge was to be approved 30 days after receipt of the final order. In the e-mail, Abrell explained that section 3-413 of the Act (*id.*) stated that the resident could not be required to leave the facility before the tenth day following the receipt of IDPH's decision but nothing in that section prohibited IDPH from extending the time.

¶ 10 Defendants filed a reply to Lakewood's response, arguing that Lakewood's claims were moot and no exceptions to the mootness doctrine applied. Defendants also argued that the e-mail attached to Lakewood's response should not be considered by the court because it was not properly authenticated and constituted hearsay.

¶ 11 During arguments on the motions to dismiss, Lakewood's counsel argued that the only way Lakewood could get relief from IDPH's order–which Lakewood believed was in excess of IDPH's statutory authority–was to come to court because *mandamus* was not allowed under the administrative review law.

- 3 -

¶ 12      After hearing arguments, the trial court granted defendants' motion and dismissed the case with prejudice.

¶ 13                                              ANALYSIS

¶ 14      On appeal, Lakewood argues that the trial court erred in dismissing its complaint for administrative review as moot pursuant to section 2-619(a)(9) of the Code. Lakewood contends that its claim regarding the additional time it was required to keep Sauvageau after the final order was issued is not moot because, if Lakewood were successful on administrative review, it could seek restitution from IDPH for the additional time it was required to keep Sauvageau at its facility. Alternatively, Lakewood argues that even if we find the issue is moot, the following exceptions to the mootness doctrine apply to the claims raised in Lakewood's complaint: (1) public interest; (2) capable of repetition yet evading review; and (3) collateral consequences. We find that, although the issue is moot, the public interest and the capable of repetition yet evading review exceptions to the mootness doctrine apply.

¶ 15      A motion to dismiss brought pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)) admits the sufficiency of the complaint, but asserts that the claim brought against the defendant is barred by an affirmative matter that avoids the legal effect of or defeats the claim. Our review of the dismissal of Lakewood's complaint for administrative review under section 2-619 of the Code is *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

¶ 16                                            I. Mootness

¶ 17      Initially, we consider whether Lakewood's claim that IDPH exceeded its statutory authority in ordering Lakewood to keep Sauvageau in its facility beyond 10 days after it issued the final order is moot. "An appeal is moot when it involves no actual controversy or the reviewing court cannot grant the complaining party effectual relief." *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 522-23 (2001). "Courts of review will generally not consider moot or abstract questions because our jurisdiction is restricted to cases which present an actual controversy." *Id.* at 523.

¶ 18      Here, the parties do not dispute that Sauvageau had left the Lakewood facility pursuant to IDPH's final order. Thus, the circuit court could not have granted Lakewood any effectual relief in the instant involuntary discharge action.

¶ 19      Further, Lakewood would not be able to seek restitution from IDPH if it successfully challenged the portion of the final order requiring Lakewood to keep Sauvageau for 30 days after receipt of the order. "Restitution is an equitable remedy that is sought before a court, and the basis of such liability is unjust enrichment to the defendant." *Independent Voters of Illinois v. Illinois Commerce Comm'n*, 117 Ill. 2d 90, 98 (1987). As IDPH retained no benefit from its order permitting Sauvageau to stay at the Lakewood facility 30 days after receipt of the order, IDPH was not unjustly enriched by its actions. *Martis v. Pekin Memorial Hospital, Inc.*, 395 Ill. App. 3d 943, 952 (2009) ("To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience."). Consequently, Lakewood's claim is moot.

¶ 20 In so finding, we reject Lakewood's reliance on *Slepicka v. State of Illinois*, 2013 IL App (4th) 121103. In *Slepicka*, the court held that the plaintiff's appeal of her involuntary discharge from a nursing home for failure to pay was not moot despite the fact that the plaintiff had already paid the amount owed under protest. *Id.* ¶ 39. The court reasoned that because the plaintiff paid under protest, she would be able to later seek restitution from the nursing home for the amount paid if she successfully appealed the involuntary discharge ruling. *Id.*

¶ 21 Here, Lakewood argues that it could seek restitution from IDPH rather than Sauvageau. We have found that it could bring no such claim against IDPH. Further, unlike in *Slepicka*, Lakewood is able to sue Sauvageau for her unpaid bills regardless of the outcome on administrative review. Even if IDPH's order allowing Sauvageau to remain at Lakewood's facility for 30 days after the receipt of the final order exceeded IDPH's statutory authority, Sauvageau was not relieved of her obligation to pay for her care at Lakewood's facility during that time.

¶ 22                                        II. Public Interest Exception

¶ 23 Having found that Lakewood's claim is moot, we now consider whether the public interest exception to the mootness doctrine applies. "The public interest exception allows a court to consider an otherwise moot case when: (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *In re Alfred H.H.*, 233 Ill. 2d 345, 355 (2009). "The exception is narrowly construed and requires a clear showing of each criterion." *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 292 (2005).

¶ 24 First, we find that the questions presented by Lakewood in its complaint for administrative review are of a public nature. "[T]he public nature criterion is only satisfied when it has been clearly established that the issue is of 'sufficient breadth, or has a significant effect on the public as a whole.' " *In re Marriage of Eckersall*, 2015 IL 117922, ¶ 15 (quoting *Felzak v. Hruby*, 226 Ill. 2d 382, 393 (2007)).

¶ 25 The questions presented in Lakewood's complaint concern whether IDPH, a State administrative agency, exceeded its statutory authority in: (1) ordering that a resident be permitted to remain in a facility for a certain number of days after affirming a notice of involuntary discharge and (2) holding hearings and issuing orders beyond the time limits proscribed by the Act. We hold that any time a State agency exceeds its statutory authority, it is a matter of public concern. We have previously held that questions of statutory compliance qualify as matters of a public nature. *In re Connie G.*, 2011 IL App (3d) 100420, ¶ 16 (holding that the issue of whether a petition for involuntary commitment complied with the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et seq.* (West 2008)) was a matter of a public nature because it involved a matter of statutory compliance). See also *People v. McCoy*, 2014 IL App (2d) 130632, ¶ 17 ("[W]here the issue is one of general applicability, such as the proper construction of a statute, the [public interest] exception is implicated."); *In re Nicholas L.*, 407 Ill. App. 3d 1061, 1071 (2011); *Ballew v. Edelman*, 34 Ill. App. 3d 490, 496 (1975) (the issue of whether the Illinois Department of Public Aid failed to adequately amend and establish standards so as to comply with the Illinois Public Aid Code (Ill. Rev. Stat. 1973, ch. 23, ¶ 1-1 *et seq.*) was of a public nature); *Bergland v. Department of Public Health*, 382 Ill. App. 3d 519, 522 (2008) (the issue of whether the Health Care Surrogate Act (755

ILCS 40/1 *et seq.* (West 2004)) applies to a discharged nursing home resident was of a public nature).

¶ 26 The issues presented in Lakewood's complaint concern the rights of both the facilities regulated by the Act and the residents receiving care at said facilities. IDPH's alleged actions in delaying the time of the hearing and issuance of the final order and requiring Lakewood to keep Sauvageau for 30 days after receipt of the final order abridge Lakewood's contract rights by requiring Lakewood to keep a nonpaying resident in its facility for more time than the Act expressly provides. Although Lakewood has the right to sue Sauvageau for her unpaid bills, it may not be able to ever receive compensation from her. This is especially true if Lakewood's allegations regarding Sauvageau's transfer of assets are accurate. These issues affect the rights of nursing home residents as well. If IDPH's action in ordering Lakewood to keep Sauvageau for 30 days after receipt of the final order was found to be within IDPH's authority, this would increase the rights of nursing home residents facing involuntary discharges.

¶ 27 These issues could eventually impact all nursing home residents and their families by increasing the costs of operating nursing homes. If IDPH continues to require nursing homes to keep nonpaying residents whose involuntary discharges have been affirmed for additional time beyond the statutory requirements, nursing homes will be forced to provide additional services to individuals from whom they may never be able to receive any compensation. Over time, the cost of providing these additional days of care will likely be shifted back onto the public consumer.

¶ 28 Next, we find that there is a need for an authoritative determination for the future guidance of public officers on the issues raised in Lakewood's complaint for administrative review. The issues raised in Lakewood's complaint concern the proper interpretation and application of the Act by IDPH's judicial officers. Further, there is currently no case law on these issues. "[I]ssues of first impression may be appropriate for review under [the public interest] exception." *In re Shelby R.*, 2013 IL 114994, ¶ 20.

¶ 29 Finally, we find that there is a likelihood of future recurrence of the questions raised in the complaint for administrative review. The issues raised in the complaint are not dependent on the specific facts of the instant case but rather concern IDPH's application of the law and IDPH's general policies and procedures. Said issues of procedure and statutory application may recur in any future involuntary discharge case.

¶ 30 Thus, all three criteria for the application of the public interest exception to the mootness doctrine have been met.

¶ 31 In reaching this conclusion, we reject defendants' reliance on *In re Marriage of Donald B.*, 2014 IL 115463, ¶ 34, in support of their argument that the issues raised by Lakewood are not of a public nature because they do not have a significant effect on the public as a whole. In *Donald B.*, our supreme court held that a constitutional challenge to a statute concerning the court-ordered visitation rights of noncustodial parents who have been convicted of a sex offense involving a minor was not an issue of public nature because it affected only a limited group of people. *Id.* Unlike in *Donald B.*, the issues raised in the instant case concern whether a State agency exceeded its statutory authority. We reassert our holding that such issues are always matters of public concern. Additionally, unlike in *Donald B.*, the issues raised in Lakewood's complaint affect the rights of a significant group of people–namely, the operators and residents of nursing home facilities.

¶ 32    We also reject defendants' argument that Lakewood's failure to support its claims that authoritative guidance is needed and that the issues will likely recur with affidavits or other proof is somehow fatal to Lakewood's claim. As we have found, the need for authoritative guidance on the issues raised in the complaint is apparent from the nature of the issues (*i.e.*, matters of IDPH's statutory interpretation and policies) and from the fact that there is currently no case law on the issues. Similarly, the likelihood that the issues will recur is apparent from the general nature of the issues. As we have found, the issues raised by Lakewood are general enough that they could arise in any future involuntary discharge proceeding.

¶ 33                    III. Capable of Repetition Yet Evading Review

¶ 34    In addition to the public interest exception, we find that the capable of repetition yet evading review exception to the mootness doctrine applies to this case. To establish that an issue is capable of repetition yet evading review: (1) "the challenged action must be of a duration too short to be fully litigated prior to its cessation" and (2) "there must be a reasonable expectation that 'the same complaining party would be subjected to the same action again.' " *Alfred H.H.*, 233 Ill. 2d at 358 (quoting *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)).

¶ 35    Here, the challenged actions of IDPH were of a duration too short to be litigated prior to their cessation. The provision of the final order–which was issued on May 6, 2014–allowing Sauvageau to remain at Lakewood's facility 30 days after receipt of the order was rendered moot by the time defendants filed their motion to dismiss Lakewood's complaint for administrative review on August 13, 2014. Additionally, the issues regarding the timing of the evidentiary hearing and the issuance of the final order could not be challenged on administrative review prior to the issuance of the final order. See 210 ILCS 45/3-713(a) (West 2014).

¶ 36    We also find that there is a reasonable likelihood that Lakewood would be subject to the same action again. Because Lakewood is a facility subject to the Act, it is reasonably likely that Lakewood will issue a notice of involuntary discharge to another resident in the future. As the issues raised by Lakewood are issues of general statutory interpretation and procedure, it is likely that IDPH will again commit the same alleged errors in future involuntary discharge proceedings. See *McCoy*, 2014 IL App (2d) 130632, ¶ 13 ("[W]hen the defendant raises a purely legal question, such as an issue of statutory interpretation, the [capable of repetition yet evading review] exception can apply because the court will likely again commit the same alleged errors.").

¶ 37    We reject defendants' argument that Lakewood failed to establish that there was a reasonable likelihood that they will be subject to the same action again because Lakewood did not submit an affidavit or other proof supporting its claim that involuntary discharges are common occurrences. First, we note that Lakewood need not prove that involuntary discharges are "common occurrences"; rather, Lakewood must establish that there is a reasonable likelihood that it will be in the same action again. See *Alfred H.H.*, 233 Ill. 2d at 358. Further, the proposition that it is reasonably likely that Lakewood will be subject to the same action again is not something that can be definitively established by an affidavit. Any affidavit offered by Lakewood would be able to speak only to the number of involuntary discharges Lakewood has had in the past. Although relevant, the number of past involuntary discharges does not establish that Lakewood will have future involuntary discharges.

¶ 38 Lakewood's status as a facility subject to the Act establishes that there is a reasonable likelihood that it will be a party to another involuntary discharge proceeding in the future. We reassert our finding that the general nature of the issues raised by Lakewood is such that the issues could arise in any future involuntary discharge proceeding. See *McCoy*, 2014 IL App (2d) 130632, ¶ 13.

¶ 39 We note that Lakewood also argues that the collateral consequences exception to the mootness doctrine applies. As we have found that the public interest and capable of repetition yet evading review exceptions apply, we need not address said argument.

¶ 40 Lakewood also argues on appeal that IDPH lost jurisdiction over the involuntary discharge proceeding when it failed to comply with the statutorily mandated timing requirements for holding the evidentiary hearing and issuing the final order. We find that the issue of whether the timing requirements of the Act are jurisdictional is premature on appeal and is better litigated in the circuit court on administrative review.

¶ 41                                    CONCLUSION
¶ 42 For the foregoing reasons, the judgment of the circuit court of Will County is reversed and the cause is remanded for further administrative review proceedings.

¶ 43 Reversed and remanded.